# MARY W. CHASE

## v.

# CITY OF CHICAGO.

1. DEFECTIVE SIDEWALK—EVIDENCE.—Where the particular hole or spot into which plaintiff's foot was caught could not be pointed out or identified, although the undisputed evidence was that it was somewhere along the sixty feet of the sidewalk fronting a certain vacant lot of that width, it was competent for the plaintiff to show that the principal portions of said sixty feet of sidewalk were in a bad condition, having holes into which her foot might be caught, and to show how long such portions had been so, prior to the accident.

2. IMPROPER STATEMENTS OF COUNSEL.—While an appellate court should be careful and critical in recognizing alleged improper statements of counsel in argument as affording ground for reversal, the court is of opinion that the statements made by counsel for the city in this case afford ground for reversal.

ERROR to the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding. Opinion filed November 8, 1886.

This was an action by Mrs. Chase against the city of Chicago, to recover for a personal injury, occasioned by plaintiff stepping into a hole in the sidewalk of one of the public streets and thereby breaking one of her legs. There was a trial upon a sufficient declaration and plea of general issue, terminating in a verdict and judgment for defendant, and the plaintiff brings error to this court.

It appears that on the evening of February 13, 1885, the plaintiff, who resided on West Monroe St. near Western Ave., went, in company with the wife of Doctor Angear and a Miss Emily Chase, to a church near Union Park, and after church and about nine o'clock, she started in company with the same persons to walk home, going westward upon the sidewalk upon the north side of West Madison street, a much traveled street; that the walking was good until they came to a portion of the sidewalk lying in front of a vacant lot sixty feet in width at some point between Leavitt and

Chase v. City of Chicago.

Oakley streets; that there they found such portion covered with snow of considerable depth, with only a narrow path for travel, and they entered that path in single file, the plaintiff being in the rear; that she had proceeded part way across such portion of sidewalk, when plaintiff, having slipped a little to the right of the path, her right foot went down a distance from sixteen to eighteen inches, and her foot became caught and held in a hole underneath, and she being thrown to the right and a° little backward, had her right leg broken a little above the ankle; that it was with much difficulty that her foot could be extricated from such hole; that she was disabled for many months, and at times suffered great pain as a consequence; that she employed Dr. Angear to set and care for her limb and paid him seventy-five dollars for his services, extending through a period of about three months. The foregoing facts appear without any substantial controversy. It further appears that plaintiff introduced evidence tending to prove that a considerable portion of said sidewalk in front of said vacant lot was, just prior to said injury and at the time the snow came, in a bad and unsafe condition; that it was made of stringers laid lengthwise and plank crosswise; that many of said planks were loose, some rotten, some broken; and there were holes in the walk so as not to be convenient and safe for travel; that it had been in such condition for at least three months before the accident, and had, some considerable time before, been reported as in a bad condition to the police department. It appeared that plaintiff's husband went the next morning to the place, for the purpose of finding the particular hole into which her foot went, but, for some reason, did not succeed, and that particular hole could not be located and identified, although it was clearly shown to have been opposite said vacant lot.

On the trial plaintiff called as a witness to show the condition of the sidewalk at the place in question, a Mr. Elvey, a coal dealer, who had his place of business on the other side of the street directly opposite said place. After stating his knowledge of the place by information received a day or two after the plaintiff's injury, he was asked if he knew the condi-

tion of the sidewalk there about that time and previously. On answering in the affirmative, he was asked to state what that condition was. He testified: "There were a number of bad — the sidewalk had a number of bad holes in it; rotten, decayed places; it had been out of order for a long time."

Whereupon the court said: "I think your question or answer, if you will allow me to suggest, is a little too broad; there could not have been a number of holes in the same place where the plaintiff was injured, in the same identical place where she was injured."

Witness: "I don't know." Counsel for plaintiff then said: "I don't think the court can confine him to one hole."

The Court: "I think I can confine him to the place where she was hurt. I think the city is not chargeable with the condition of the sidewalk at any other place than where the injury occurred. Strike out the answer." To which exception was duly taken by plaintiff.

The bill of exceptions contains the testimony of each of the witnesses of the respective parties, and a statement that it is all the evidence introduced on the trial, which is followed by this statement concerning one of the counsel for defendant:

"And thereupon, in his speech to the jury, Mr. Washburne, attorney for defendant, against the protests of attorney for plaintiff, among other things stated: That in his position as attorney for the city, it was customary for him to try cases brought against the city, some of which were meritorious and others based upon fraud and perjury; that it became his duty, as the representative of the taxpayers of the city, to characterize this as one of the cases which had not a shadow of merit—a case based upon fraud and perjury, and maintained by a conspiracy between John Gibbons, the attorney for the plaintiff, and Dr. Angear; that it was a blackmailing scheme to extort money from the city; that he hoped the jury would remember, after they retired to their jury room, that Mrs. Chase was very little interested in the result; that the amount of the verdict which they would give her would be divided into three equal parts, one third going to Mrs. Chase, one third to Dr. Angear and one third to John Gibbons; that he

hoped the jury would not permit these men, who came from Iowa, this Iowa contingent, to profit by such a conspiracy. And thereupon, turning around in a threatening and boisterous manner, stood in front of John Gibbons where he was sitting, shook his fist in his face and hallooed out at the top of his voice, ' Why didn't you put Mr. Chase upon the witness stand, John Gibbons? Why didn't you put Mr. Chase upon the witness stand, John Gibbons? Why didn't you put Mr. Chase upon the witness stand, John Gibbons? I will tell you why. Because you knew that that old, gray-haired man would not perjure himself for you, and you could not perpetrate this fraud and conspiracy with his assistance.' That during this dramatic recital, attorney for plaintiff tried to get the ear of the court but could not be heard, and it was impossible for him to get up from the chair in which he was seated, without coming in contact with Mr. Washburne."

Mr. JOHN GIBBONS, for plaintiff in error.

Mr. HEMPSTEAD WASHBURNE and Mr. CLARENCE A. KNIGHT, for defendant in error.

McALLISTER, P. J.  We propose to consider but two points arising upon this record, viz.:  (1)  Whether there was error in the striking out and excluding form the jury, the answer of the witness Elvey, as set out in our statement of the case. (2)  Whether there was such misconduct of counsel for defendant, in his address to the jury, as requires a reversal.

As to the first point we are of opinion that the answer of the witness which the court excluded, was material and proper. There was nothing in plaintiff's declaration to limit her to a particular hole or spot in the sidewalk, as being the one which caused the injury.  The injury occurred in the night time, the sidewalk was covered with snow to the depth of about a foot.  The street was much traveled, and upon investigation the next day, the hole her foot went into could not be located.  But the depth down her foot went, and the manner in which it was fastened and held there—facts which were

shown by undisputed evidence, not only tended to prove, but demonstrated that it was not the mere snow that held her so fast, but that her foot had been caught in a hole in the sidewalk itself. Here was the peculiarity of the case; the particular hole or spot could not be pointed out or identified, although the undisputed evidence was, that it was somewhere along the sixty feet of the sidewalk fronting a certain vacant lot of that width. Now, under such circumstances, was it not competent for the plaintiff, upon both the question of notice to and negligence of, the city authorities, as well as of the consequential injury to her, to show that the principal portions of said sixty feet of sidewalk were in a bad condition, having holes into which her foot might have been caught, as it was, and how long such portions had been so, prior to the accident? We do not regard the point as debatable. The exclusion was error.

The second point may be said to involve two propositions: one, whether the words and conduct of one of the counsel for defendant, as set out in our statement of the case, were improper; and secondly, if so, whether the impropriety was such as to call for a reversal of the judgment.

From our examination of the record, we are of opinion that the statements of said counsel as respected other cases, that this case was based upon fraud and perjury maintained by a conspiracy between Gibbons, plaintiff's attorney, and Dr. Angear, was a black mailing scheme to extort money out of the city, that Mrs. Chase was very little interested in the verdict, that the amount of the verdict which the jury might give her would be divided into three equal parts, one third going to Mrs. Chase, one third to Dr. Angear, one third to John Gibbons, were improper, because not warranted by, and without any just foundation in the testimony adduced on the trial.

The remaining question is, were these statements and the conduct of the counsel in making them, sufficient to call for a reversal of the judgment. In answering that question, we shall waive the opportunity for homilies upon professional conduct, and endeavor to treat it in a practical way. The fact that plaintiff was injured in the manner and to the degree

Chase v. City of Chicago.

specified in our statement of the case, was shown by the testimony of the plaintiff herself, by the wife of Dr. Angear, who accompanied her to church and on her return, and by Miss Emily Chase, whom defendant introduced as a witness; about that there was no conflict. Then the evidence on behalf of plaintiff strongly tended to show that the sidewalk in front of said vacant lot had, for months before the falling of the snow which covered it at the time of the accident, been in such bad condition as to render it highly probable that it had holes in it of a dangerous character, when covered with snow. The manner of the injury almost forced the conclusion that plaintiff's foot caught in some one of those holes. The evidence tending to show notice to the city, was sufficient to go to the jury; and there is no pretense that plaintiff was not in the exercise of ordinary care. Such was the case to be submitted to the jury, when the defendant's counsel comes to them in the character, real or assumed, of special guardian of the interests of taxpayers, and makes the statements complained of.

There are cogent reasons why appellate courts should be careful and critical in recognizing alleged improper statements of counsel in argument, as affording ground for reversal.

But every case must depend upon its own circumstances. It would seem consistent with the ordinary principles upon which justice is administered, that, if in this case, the statements complained of were material, and this court can see from an examination of the evidence that they were likely to, and probably did, wrongly influence and mislead the jury to return a verdict against the plaintiff to her manifest prejudice, this court should redress the wrong by reversing the judgment. We think such was the case, and on account of those statements and the other error pointed out, the judgment must be reversed and cause remanded.

Judgment reversed.