# WESTERN AND ATLANTIC RAILROAD COMPANY *v.* MORRISON.

1. Where in the trial of an action for damages against a railroad company for personal injuries the evidence as to the company's alleged negligence was conflicting, it was legitimate for the plaintiff's counsel to argue to the jury that the failure of the defendant to introduce and examine as a witness one of its employees who was present at the time when the injuries in question were sustained was a circumstance from which an inference could be drawn that, if this employee had been introduced and

examined, he would have testified to facts prejudicial to the defendant. This is so whether the counsel's contention as to this matter was, under all the circumstances in proof, well founded or not; nor was such argument out of order because defendant's counsel had caused the employee in question to be present in court, so that he could have been introduced and examined by the plaintiff's counsel.

2. If, in view of the entire evidence, it was incumbent upon the court to give to the jury any instruction with reference to the defendant's failure to examine such employee as a witness, it was certainly right to refuse to give in charge a request to the effect that the production of the employee in court by the defendant was sufficient to relieve it of any presumption or inference that, in case he had been examined, he would have sworn to facts showing negligence on the part of the defendant.

3. There was no material error in admitting evidence; the requests to charge, so far as pertinent and legal, were covered by the general charge given to the jury; there was, in view of the entire charge, no error in those portions of it complained of in the motion for a new trial; and the verdict was warranted by the evidence.

SIMMONS, C. J., dissenting. It will impart no strength to a defense for the defendant to produce a witness not examined by himself, call attention to his presence, and put him at the service of the plaintiff for examination; but where this is done, such strength as the defense really has on the evidence before the jury is not subject to be impaired or discounted by any inference to its disadvantage similar to that which might have been drawn from the absence of this witness had he not been produced or accounted for. If more evidence were needed to establish it, the defense would fail for that reason; if more were not needed, it could not, under these circumstances, be required. No unfavorable inference or presumption could arise from mere failure to examine the witness, and such failure was not legitimate matter for comment by counsel.

Argued January 16, — Decided August 5, 1897.

Action for damages. Before Judge Reid. City court of Atlanta. May term, 1896.

*Payne & Tye,* for plaintiff in error.
*Van Epps, Ladson & Leftwich,* contra.

LUMPKIN, P. J. We shall not discuss in detail the numerous grounds of the motion for a new trial, the overruling of which is the error complained of in the present bill of exceptions. It is a case where an employee of a railroad company, upon conflicting evidence, obtained a recovery for personal injuries. There are no important questions of law involved, except those specially dealt with in the headnotes. The plaintiff's right to a verdict did not turn upon any presumption of negligence raised by law against the defendant. It was a case in which

he introduced evidence tending to prove the company's alleged negligence, to which it replied with evidence tending to show due diligence on its part; and it was therefore simply a matter for the jury to determine upon which side the evidence preponderated.

It appears from the record that one Waters, who was an employee of the defendant in the capacity of fireman at the time when the injuries in question were sustained, and who had excellent opportunities for knowing the truth of the matter, was not introduced as a witness at the trial. He was, however, at the instance of the company, present in court, and this fact was known to the plaintiff's counsel. The latter, in his argument to the jury, contended that the failure of the defendant to introduce and examine this witness was a circumstance from which an inference could be drawn that, if he had been so introduced and examined, he would have testified to facts prejudicial to the defendant. The court was requested to compel the plaintiff's counsel to desist from making such an argument, on the ground that it was improper and illegal; and was also requested to declare a mistrial because of such "improper argument." The court held that the argument was not improper, and refused to declare a mistrial because of it. It was urged here that these rulings were both erroneous, for the reason that when the defendant produced the witness in court, so that he could have been introduced and examined by the plaintiff's counsel if he had chosen to do so, there could be no proper inference that he knew anything which would be detrimental to the company. The court also refused to charge the following written request, presented by counsel for the defendant: "As plaintiff's counsel have argued that as only the engineer was examined as a witness, and not the fireman, that this was a circumstance from which the jury might infer that, had the fireman been introduced, his testimony might have shown negligence on the part of the company, I charge you that when the defendant company in open court tendered this fireman Waters as a witness to be introduced by plaintiff if he desired, this was sufficient to relieve defendant of this presumption."

While the arguments of counsel should be confined within legitimate bounds, they should not be too greatly restricted. In *Spence* v. *Dasher*, 63 *Ga.* 432, Jackson, Justice, said: "Counsel should have ample latitude in argument, and this court will not interfere when it is allowed by the presiding judge, except in cases of clear abuse of discretion and serious damage to the party complaining." Again, in *Inman* v. *The State*, 72 *Ga.* 278, Justice Blandford remarked: "Counsel are allowed the largest liberty in the argument of cases before juries, and whether the argument be logical or illogical, or whether the inferences and deductions drawn by them are correct or not, this court will have no power to intervene." And in *Taylor* v. *The State*, 83 *Ga.* 659, the same Justice remarked that a certain argument made by counsel "may have been very illogical, but the court could not prevent counsel from drawing illogical deductions from testimony which had been introduced." These are only a few of the instances in which it has been held that considerable latitude is to be allowed counsel in discussing their cases before juries. It is one thing for an attorney to contend that "such and such" a proposition is true, or that "such and such" an inference is deducible from a given state of facts or circumstances, and quite a different thing for the judge to inform the jury that the positions taken by the attorney are correct. If the law imposed upon the judge the duty of interfering with arguments before juries whenever, in his opinion, the reasoning of counsel was unsound, we apprehend that interruptions of this sort would be very frequent indeed.

It is not necessary to rule in the present case that the contention of plaintiff's counsel as to the effect of the defendant's failure to introduce the witness Waters was well taken. It was, after all, a matter to be passed upon by the jury. Nor do we think the argument upon this matter was out of order because the defendant's counsel had caused Waters to be present in court so that he could have been introduced and examined by the plaintiff's counsel. Presumptively, all persons will tell the truth when sworn to do so; but we know from experience that it is frequently unwise to call as a witness one

who, for any good reason, is likely to be biased or prejudiced in favor of the opposite side. Every lawyer who has had much practice in the courts is well aware of this, and generally declines, unless compelled by circumstances so to do, to call a witness whom he has reason to believe is hostile to his client or friendly to the latter's adversary.

Theoretically, one party may be under as much obligation as the other to introduce a witness who was present at a transaction or occurrence in dispute, and failure to do so may be said to cut as hard against the one as the other, or that it should not cut against either, when the witness is in court and ready to be examined; but in spite of all the reasoning and refining which may be had on this subject, and notwithstanding intimations and expressions to the contrary by learned judges, the great fact remains that a large number of witnesses are, for various reasons, more or less biased; and it certainly is true that a party may with more safety introduce a friendly witness than one who is otherwise—not necessarily from a desire to have perjury committed in his favor by the former, or from a fear that it will be committed against him by the latter, but because, as everybody knows, there is much in the manner in which a witness testifies, a great deal often depending upon his emphasis, upon the clearness or uncertainty of his recollection, upon his animus, and upon a hundred other things which can not well be described but can readily be imagined, all of which, without bringing him into the attitude of swearing falsely, affect and qualify the force of what he says.

The above mentioned theoretical rule is, therefore, too broad for universal application, and the lawyer who does not recognize that this is so is apt to make serious blunders in introducing testimony. As an illustration of the matter with which we are now dealing, suppose there was a matter of fact in controversy between A. and B., the truth of which was known to no other persons except these two and C., a brother of B. A. goes on the stand and gives his version of what occurred; B., in his turn, gives an entirely different version, but does not introduce as a witness his brother C., though the latter is present in court. Is it not a proper matter for con-

tention by A. that B. failed to introduce his brother because he knew that the brother's testimony would prejudicially affect B.'s case? And if B.'s counsel should reply to this, "Why did not A. introduce C., unless he feared C.'s testimony would be detrimental to his case?" could not A. properly make reply, "I do not care to go into my opponent's family for a witness"? Other such instances might be given, but it is enough to say that in almost every trial the acts or conduct of either party bearing directly upon the questions at issue are legitimate matters of comment. Very frequently, of course, arguments of the nature above indicated should be given little weight, and in each case their value must necessarily depend upon the particular facts and circumstances in proof.

We are of the opinion that the judges should have as little to say about matters of this kind as possible. They should not restrain counsel so long as their arguments are kept within reasonable and proper bounds, and they should also be careful not to usurp the functions of the jury in accepting or in disregarding what the counsel have to say. We therefore think, in the present case, that it was certainly right for the judge to refuse to give in charge the request above quoted. It was not for him to say what effect the production of the employee in court by the defendant ought to have had, and he was surely right in declining to instruct the jury that this, of itself, would be sufficient to relieve the defendant of any presumption or inference that, in case he had been examined, he would have sworn to facts showing negligence on its part.

We do not think the case of *Davis & Hatcher*, 75 *Ga.* 645, relied on by the Chief Justice in support of his dissent when this case was decided, is controlling upon the question in hand. No point was raised in that case as to the propriety of any argument submitted by counsel, nor did this court, in deciding that case, review any charge, or refusal to charge, by the trial court with respect to the failure of the defendant company to introduce its fireman as a witness. The plaintiffs evidently relied mainly, if not entirely, upon the legal presumption of negligence raised by law against the defendant; and the verdict being against them, they sought a

reversal of the judgment denying them a new trial. We understand their contention to have been that the railroad company could not successfully and completely demonstrate its diligence, and thus overcome the legal presumption against it, without calling as witnesses both the engineer and the fireman who were employed on the locomotive by the running of which the plaintiffs' bull was killed. This court held, as matter of law, that the testimony of a single witness, viz. the engineer, was sufficient to acquit the company of negligence, if the jury chose to believe that witness; and Justice Blandford said they had the right to do this, if they thought proper. It is true he did remark that, "under the circumstances of this case, the fireman being present and open to plaintiffs, no inference could be drawn against defendant because he was not sworn"; but we are constrained to regard this remark as being merely obiter, the matter to which it relates not being one upon which it was necessary to pass. The real point ruled in that case was: that a railroad company, sued for the killing of live stock, and being required to overcome a legal presumption of negligence, was not obliged, in order to do this, to call and examine as witnesses all of its employees who were or might have been cognizant of the facts of the occurrence. The decision rendered holds simply that, in such a case, the company may, if it so desires, rest its defense upon the testimony of a single employee, taking the risk of his being discredited by the jury; and if the jury choose to believe him, the mere fact that the company did not introduce another of its employees is not of itself sufficient cause for setting aside the verdict and awarding a new trial. It will be noted that the headnotes in that case were made by the reporter, and that the opinion itself was the only official utterance of the court. We repeat, that in determining what effect the decision of that case should have on the case now in hand, it must not be overlooked that there was no question whatever with reference to the argument of counsel or to the court's charging, or refusing to charge, as to what weight or importance the jury should attach to the non-introduction by the defendant of its fireman as a witness.

We deem it unnecessary to the purpose of this discussion to comment at length upon the decision of this court in the case of *Anderson* v. *Savannah Press Company*, 100 *Ga.* 454, to which, we are informed, the Chief Justice will refer in his dissenting opinion. We are unable to find in that case any intimation of a principle in conflict with what is here laid down; and if the opinion of Justice Atkinson therein contains anything at all relevant to the present question, it supports the view of the same entertained by the majority, for the reason that in that case the rule is distinctly recognized that the non-production of evidence within the control of a party may authorize the jury to make inferences unfavorable to such party.

The Chief Justice will, in his dissenting opinion, also refer to the cases of *Washington* v. *State*, 87 *Ga.*, and *Johnson* v. *State*, 88 *Ga.*, and make certain extracts from the opinions therein. Read with reference to the questions under discussion in those cases, it is hoped that the language then used was appropriate and pertinent; but whether so or not, it is difficult to perceive how it can throw much light upon the present controversy, since the question it involves could not possibly have been in mind when those cases were being considered. It is not desired to comment further upon them except to say that in the former, which was a case of arson, the language of the writer which the Chief Justice will quote was used in endeavoring to establish the proposition that the trial judge erred in allowing the solicitor-general, in his argument to the jury, to state "that frequent burnings had occurred throughout the country," and make this statement the basis of an argument for a strict enforcement of the law; and in the latter, the question under discussion was, whether an admission by the accused resulted either from a failure of his counsel to examine the State's witnesses concerning a fact which the court had ruled to be inadmissible, or from a failure to introduce these same witnesses, in behalf of the accused, for the purpose of proving this identical fact, after their exclusion as witnesses for the State. Immediately following that portion of the writer's opinion in the *Johnson* case which the Chief Justice will quote are the following words: "Let us sum

up the matter in a nutshell: The solicitor-general offered to prove a fact by one witness, and stated he could prove it by several others; the opposing counsel objected to the testimony, and the court sustained the objection; then, because this counsel declined to examine these witnesses on the very matter which, at his instance, the court had ruled was not then a proper matter for investigation, and because he refused to introduce these witnesses as his own and examine them about this very matter, it is argued that he thus admits for his client the truth of the thing he had induced the court to rule out. It would be dangerous indeed to object to testimony and succeed in having the objection sustained, or to decline to introduce hostile witnesses, if either of these things resulted in establishing, as against the party so objecting or declining, the truth of that which, from his standpoint and in the opinion of the court, was inadmissible altogether."

We do not think that any decision of this court, upon a careful examination thereof, will be found contrary in principle to what is now decided upon the point in controversy.

*Judgment affirmed. All concurring, except the Chief Justice.*

SIMMONS, C. J., dissenting. The controlling question presented for determination in this case is whether, under the circumstances attending the trial, the defendant can properly be said to have forfeited all right to have the merits of its defense passed upon in the light of the evidence submitted, unprejudiced by any imputation of bad faith and duplicity on its part, or was unjustly and undeservedly forced to go before the jury under the cloud of a suspicion that it had wilfully endeavored to conceal and suppress the truth, in the hope that it might thus be able to impose upon the court and jury, and perpetrate a fraud upon its adversary. Obviously, the solution of this question must depend upon whether or not the familiar maxim, " *Omnia præsumuntur contra spoliatorem*, as now liberally interpreted and applied, can be invoked in a case such as that with which we are called upon to deal.

As a general rule, it is the privilege of a party to rest his case upon such evidence only as he may deem proper and expedient to offer in his behalf. "All the law requires is suffi-

cient proof; and a party is not bound to introduce all the witnesses to the facts." Jackson *v.* State, 77 Ala. 25, citing Patton *v.* Rambo, 20 Ala. 485. "It is the privilege of a suitor to call every person as a witness who may give material evidence in his favor, and if he omits to do so, he does it at his peril; but there is no duty, and an omission to call all that are within reach does not necessarily imply a fraud, or a design to suppress the truth or to impose a falsehood upon the jury." Bleecker *v.* Johnston, 69 N. Y. 309. As a matter of course, the evidence relied on must be competent, and admissible under the established rules of practice, one of which is that the best, or highest, evidence is always required. "This rule does not demand the greatest amount of evidence which can possibly be given of any fact, but its design is to prevent the introduction of any which, from the nature of the case, supposes that better evidence is in the possession of the party"; and "where there is no substitution of evidence, but only a selection of weaker instead of stronger proofs, or an omission to supply all the proofs capable of being produced, the rule is not infringed." 1 Greenlf. Ev. § 82, citing numerous authorities. Nor is a party under any obligation to aid his adversary "in making out his case." Carter *v.* Chambers, 79 Ala. 232, citing McGar *v.* Adams, 65 Ala. 106. And a bare suspicion that the defendant, if legally called upon to do so, would be unable to vindicate himself, does not amount to substantive proof of facts it is necessary for the plaintiff to affirmatively establish, and can not supply the place of competent evidence. Meagley *v.* Hoyt, 125 N. Y. 771; Norfolk &c. R. Co. *v.* Brown, 91 Va. 668; Diel *v.* Ry. Co., 37 Mo. App. 454. "To so hold would be substituting conjecture for proof." Arbuckle *v.* Templeton, 65 Vt. 206. Indeed, a "defendant may, and frequently does, rest his defense on what he considers the weakness of his adversary's testimony, as he interprets it, or on the exculpatory features it presents." Carter *v.* Chambers, supra. In a word, a party is ordinarily left entirely free to conduct his cause in such manner, not contrary to the prescribed rules of practice, as he may deem best calculated to promote his interests. To this general rule there is but one exception, viz.:

that principle of law which the maxim above quoted was intended to expound,—"Every presumption is made against a wrong-doer." Broom's Legal Maxims, 938.

While under no duty to aid his adversary in making out his case, a party is not at liberty, by a resort to questionable means, to throw obstacles in his path. Hence: "If a man destroys a thing that is designed to be evidence against himself, a small matter will supply it," said L. C. J. Holt. 1 L. Raym. 731. "This rule is evidently based on the principle that no one shall be allowed to take advantage of his own wrong." Chamberlayne's Best on Ev. § 412. Nor does it matter that resort is had to passive, rather than to active, measures calculated to defeat the ends of justice. Thus, wilfully withholding evidence is treated as equivalent to an attempt to suppress or destroy it. Lawson's Presumptive Ev. 120 et seq.; Broom's Legal Maxims, supra. Especially, when the evidence withheld is primary, and weaker proofs are relied on; "for when it is apparent that better evidence is withheld, it is fair to presume that the party had some sinister motive for not producing it, and that, if offered, his design would be frustrated." 1 Greenlf. Ev. § 82. "The conduct of a party in omitting to produce that evidence, in elucidation of the subject-matter in dispute, which is within his power, and which rests peculiarly within his own knowledge, frequently affords occasion for presumption against him; since it raises a strong suspicion that such evidence, if adduced, would operate to his prejudice." Starkie, Ev. *75. Accordingly, it has become a fixed rule that: "The non-production of papers essential in the trial of a cause, which are proved to be in the possession of one of the parties, unexplained, raises a presumption that they contain something which would tend to the disadvantage of the party retaining them, if they were produced." Eckel v. Eckel, 49 N. J. Eq. 587. And since the privilege has been conferred upon parties of testifying in their own behalf, the rule has been extended, so that: "When one party to an action has in his *exclusive* possession a knowledge of facts which would tend, if disclosed, to throw light upon the transactions which form the subject of controversy, his failure to offer

[himself as a witness] may afford presumptions against him." Kirby *v.* Tallmadge, 160 U. S. 379. To the same effect, see: Payne *v.* Crawford, 102 Ala. 388; Hefflebower *v.* Detrick, 27 W. Va. 16; McDonough *v.* O'Niel, 113 Mass. 92; Leeper *v.* Bates, 85 Mo. 228; Conn. Mutual Life Ins. Co. *v.* Smith, 117 Mo. 261; Throckmorton *v.* Chapman, 65 Conn. 442. But "the silence of a party to an action against whom damaging facts are called out is not equivalent to an admission of their truthfulness" (Enos *v.* St. Paul F. & M. I. Co., 4 S. Dak. 640), nor will it have the effect of shifting the burden of proof. Werner *v.* Litzsinger, 45 Mo. App. 106.

For thus applying the rule in cases where the party himself has an exclusive knowledge of material facts in controversy, but nevertheless declines to testify, there is much reason; for wilfully withholding evidence locked in one's breast tends as effectually to cast a suspicion upon the righteousness of his cause as would the suppression of documentary evidence securely hidden away in a secret drawer, or guarded by the locks and bars of a private vault. However, in a case where a person, not a party to the cause, is not produced as a witness, although probably cognizant of facts material to the issue, this rule may, or may not, be justly invoked; and therefore, due caution should be observed in its application. Ordinarily, the failure to call as a witness one who is equally within the control of both parties will be no ground for any presumption against either party. Diel *v.* Mo. Pac. Ry. Co., 37 Mo. App. 454; State *v.* Rosier, 55 Iowa, 517; Miller *v.* Dayton, 57 Iowa, 423, 426–7; State *v.* Cousins, 58 Iowa, 250; Horowitz *v.* Hamburg-American Packet Co., 41 N. Y. S. 54; People *v.* McWhorter, 4 Barb. 438. Certainly, "the mere omission of a party to a civil action to call a witness who, at the most, has no other or better knowledge of the matter in dispute than those who are produced and give evidence, is not necessarily suspicious." Bleecker *v.* Johnston, 69 N. Y. 312. And to the same effect, see Will's Circumstantial Ev. 141, 142. "Whatever inferences may be drawn against a party by reason of his failure to produce evidence in his control are allowable only on the theory that he *willfully* withholds such evidence." Car-

tier *v.* Troy Lumber Co., 138 Ill. 534. "The non-calling of a
witness   .   .   will not justify an *arbitrary* presumption of sup-
pression." 2 Whart. Ev. § 1267. Even though. there be "a
conflict of testimony, the non-production by either party of a
witness who, if he was called, could shed light on the matter
in controversy, does not warrant a presumption in favor of
either plaintiff or defendant. It only warrants a presumption.
against both." 19 Am. & Eng. Enc. of Law, p. 72 n. For,
as was pertinently remarked in Cross *v.* Ry. Co., 69 Mich. 363,.
if a person be "within reach of the process of the court," either
party may with abundant reason be said to have "equal facil-
ities for bringing [him] into court as a witness; and the mere
fact that either [fails] to do so [raises] no presumption that
[this person] would testify against their particular theory"
of the case. The rule in question must be given "a reasona-
ble construction;" and "where the witness is 'subject to the
call of either party,' no inference can be drawn from a failure.
to produce him." Taylor on Ev. (9th ed.) 183[26] (note). In
this view Mr. Lawson also concurs. Lawson's Presumptive Ev..
135, 137. "The presumption is always in favor of honesty
and fair dealing, and remains available to the party in whose
favor it arises until overcome by countervailing evidence." 1
Rice, Ev. 96 – 7. Hence, "it is error" to indulge any unfavor-
able "inference merely from the fact that a party fails to call
a certain witness. No prejudice should arise from such failure,
unless the witness be a material one, and presumptively under
the *special control* of the party." 3 Rice, Ev. § 158. Espe-
cially in the administration of criminal law is the rule "to be
cautiously applied, and only in cases where it is manifest that
proofs are within the power of the accused, not accessible to
the prosecution." Com. *v.* Webster, 5 Cush. 316.

The rule which authorizes unfavorable inferences to be
drawn against a party who resorts to dishonest methods in the
conduct of his cause, rests upon the ground of "natural equity."
Chamberlayne's Best on Ev. § 411. Such inferences can be
indulged only upon the idea that they frequently become "es-
sential to the pure administration of justice." Greenlf. Ev.
§ 82; 1 Elliott's Gen. Pr. § 403. Where the reason of the rule

ends, the rule itself must end also. Therefore, it "ceases to operate when no presumption of fraud, or of sinister purpose, can arise." Jackson *v.* State, 77 Ala. 25. As where, for instance, a person not called would have been incompetent to testify: Adams *v.* Main, 3 Ind. App. 232; or could not do so with propriety: Gardner *v.* Benedict, 75 Hun, 204; or where a person had been subpœnaed, and was absent through no fault of a party: Ry. Co. *v.* Duncan, 88 Tex. 611, Manhattan Life Ins. Co. *v.* Alexander, 89 Hun, 449; or could not be found: McGuire *v.* Railroad Co., 16 N. Y. Supp. 922.

A reasonable construction and just and intelligent application of the rule is to be found in the decisions of the Supreme Court of Louisiana. In Day *v.* Ry. Co., 35 La. Ann. 694, where the plaintiff sought to recover for stock killed at night by one of the defendant's trains,—relying, perforce, upon circumstantial evidence only,—it was held that: "The failure of a railroad company to introduce the testimony of its employees who were on the train at the time of the accident raises a presumption of negligence against the company." The defendant knew the particular train which killed the stock, and the names and identity of those of its employees who were on that train and witnessed the occurrence in question; and therefore had it peculiarly within its power to produce evidence in regard thereto. The plaintiff, on the other hand, was at a great disadvantage; for while the process of the court was at his command, his ability to ascertain the names and whereabouts of the witnesses to the facts was by no means the same as that of the company, which could hardly have been expected to furnish him, in advance of the trial, with any information on the subject. In Peetz *v.* R. R. Co., 42 La. Ann. 541, it did not, however, satisfactorily appear that the defendant was attempting to suppress evidence; and the court correctly held that the rule announced in Day's case applied only where it was shown that persons in the employ of the defendant, but not produced as witnesses, were present and saw what occurred, or where it was "made evident that they had knowledge which the employer desired to conceal." And in the later case of Sauer *v.* Union Oil Co., 43 La. Ann. 699, this position was adhered to. All that appeared as suggesting any reason why

a certain employee of the defendant should have been called was, that the plaintiff testified that this employee "was within about 25 feet of him when he was struck" on the head by a piece of machinery alleged to have been defective. Accordingly, the court said: "It is not shown that [this employee] remained in the employ of the company, or was accessible, or was even living at the time of the trial; nor is there any showing that he was observing plaintiff when the accident occurred. It is plaintiff's case that needs additional proof, not defendant's. There is no ground for the application of any presumption in such a case."

Under facts similar to those appearing in Day's case, supra, Judge Caldwell, in a case before the United States Circuit Court of Appeals, held that the defendant's "failure to produce the engineer as a witness to rebut the inferences raised by the circumstantial evidence would justify the jury in assuming that his evidence, instead of rebutting such inferences, would support them." Gulf etc. Ry. Co. v. Ellis, 54 Fed. 481. Analogous cases, in which the rule seems to have been understood and correctly applied, are: The Fred M. Laurence, 15 Fed. Rep. 635, where the facts concerning a collision between two vessels were in dispute; and Schwier v. R. R. Co., 90 N. Y. 558, where an infant was injured by the running of the defendant's locomotive. In Bent v. Lewis, 88 Mo. 462, the rule was invoked against the plaintiff, who relied "on evidence circumstantial in kind and of a vague and indefinite character, when by his own admission he [had] it in his power to produce positive and direct proof of the facts." In Cole v. Ry. Co., 81 Mich. 156, s. c. 95 Mich. 77, the plaintiff absented herself from the trial, although she was the only person able to give direct and positive testimony concerning the effect of a fall she received, which she alleged was the result of the defendant's negligence; and the court justly held that her unexplained absence authorized an unfavorable inference as to the justice of her cause, since she voluntarily chose to rely on circumstantial in lieu of direct proof that this fall, rather than other natural causes, produced the peculiar affliction from which she suffered.

On the other hand, there are decisions which more than jus-

tify the observation that: "However salutary, and in general equitable, the maxim, '*Omnia præsumuntur contra spoliatorem*,' must be acknowledged to be, it has been made the subject of very fair and legitimate doubt whether it has not occasionally been carried too far." Chamberlayne's Best on Ev. § 414. Apparently without regard to whether the evidence could properly be said to be within the exclusive control of one party and not accessible to his adversary, it has been held that an unfavorable presumption arises merely from the non-production of an employee: Whitney *v.* Town of Ticonderoga, 127 N. Y. 40; Wimer *v.* Smith, 22 Or. 469; or husband: Toomey *v.* Lyman, 15 N. Y. Suppl. 883; or "father of the prosecutrix": Rice *v.* Com., 102 Pa. St. 408; or father and grantor, whose deed is attacked: Hall *v.* Vanderpool, 156 Pa. St. 152; or alleged paramour of a party, in a libel for divorce on the ground of adultery: Kenyon *v.* Kenyon, 34 N. Y. Suppl. 720. It has even been held that, as the "plaintiffs had a right to call upon defendants to produce" certain documentary evidence in their exclusive possession, "and not having given them that notice, the *defendants* [were] entitled to whatever benefit [might] be derived from that omission." Frick *v.* Barbour, 64 Pa. St. 120. And in Seward *v.* Garlin, 33 Vt. 584, it was held that an unfavorable inference would arise from the failure of a party to interrogate a witness concerning a matter as to which the party himself had testified, and that such omission might "be weighed by the jury as a circumstance tending to show that the testimony of the party upon such point [was] not true." The Supreme Court of West Virginia seems to have adopted the arbitrary rule that the duty of calling a witness accessible to either side invariably devolves exclusively upon the party carrying the burden of proof, and that a failure to produce such a witness, unless explained, "raises the conclusive presumption that [his] testimony, if introduced, would be adverse to the pretensions of such party." Union Trust Co. *v.* McClellan, 40 W. Va. 405.

To hold that, merely because a person be in the employ of one of the parties, he belongs to, or is "evidence within the exclusive control" of such party, "not accessible to the other

side," offends reason and perverts the truth.   "Neither slavery nor involuntary servitude, except as a punishment for crime, . . shall exist within the United States."   Const. U. S.   To swear in behalf of his master is not — at least, ought not to be — a duty within the scope of a servant's employment; so it can not be arbitrarily assumed that his employer has hired or purchased outright his testimony, and therefore controls or owns it absolutely.   Nor, ordinarily, can a party's relatives logically be considered as being in his exclusive possession, and unavailable as witnesses to his adversary.   An omission to call a relative is not necessarily even suspicious; certainly it does not amount to substantive or persuasive proof of an attempt to suppress evidence.   There may often be cogent reasons, into which no improper motive enters, why a party may not wish to vouch for the credit of a person who, through perhaps no fault of his own, happens to be related to him, by blood or marriage, in a more or less remote degree.   Only in a measure more absurd is the arbitrary rule that it is incumbent upon a party claiming under a deed to call as a witness his grantor, in the event the other side may choose to make an attack upon its validity.   By a parity of reasoning, one's tailor becomes one's bounden witness, if perchance one's clothes become the subject-matter of controversy in a contest with one's adversary.   None of the other very remarkable decisions last above cited can with profit be seriously discussed.

A review of the Georgia decisions bearing on the subject now under investigation shows that, thus far, this court has succeeded admirably in steering clear of the judicial blunders into which some of the courts of this country have fallen.   In *Hollis* v. *Stevens*, 36 *Ga.* 463, 473, Walker, J., announced the general rule that: "A party has the right to select such competent testimony as he may see proper; and if he can, by any legal testimony, establish the truth of his allegations, the jury should not be told that the introduction of such testimony, rather than some other testimony which the opposite party insists would be stronger, is a circumstance against the party. Parties have the right to introduce legal testimony to establish the truth of their cases.   If the evidence be competent, perti-

nent to the issue to be tried, and makes clear the point in controversy, this is sufficient, and the jury ought not to be told that it is of an unreliable character." The exception to this general rule, viz., that "failure to produce evidence within the power of a party" raises a presumption "that the evidence, if produced, would be prejudicial to the party," was recognized and correctly applied in *Nicol & Davidson* v. *Crittenden*, 55 *Ga.* 497. "The evidence showed that Kimball had made to Crittenden a bill of sale for the property in dispute, or for a part of it at least; that bill of sale was not produced at the trial, and no attempt was made to account for its non-production." See page 501. So, also, in *Davis* v. *Alston*, 61 *Ga.* 225, where it appeared that a receipt contained "the contract in the main on which the issue in the case" depended, the court properly held that if this paper was in the "possession of defendant or his counsel and not produced, counsel for plaintiff [might] call the attention of the jury to the fact as a suspicious circumstance, unless the court had ruled that it need not be produced." Again, in *Gainesville Railroad* v. *Wall*, 75 *Ga.* 282, where the plaintiff sought damages for the killing of a cow by one of the company's trains, it was held: "Where the engineer and fireman were always present on the engine, but only the former was sworn as a witness, and the absence of the latter was not accounted for, this was a circumstance from which the jury might infer that, had the other witness been introduced, his testimony might have shown negligence on the part of the company." This was a case similar to that of Day *v.* Railway, discussed above, where it was peculiarily within the power of the defendant to produce direct and positive evidence of the facts in issue. This is true, also, of the case of *Hoffer* v. *Gladden*, 75 *Ga.* 532, wherein it was said that "Failure to produce testimony is a badge of fraud, where the bona fides of the transaction is in issue, and witnesses who ought to be able to explain it are in reach." There, certain creditors attacked as fraudulent a mortgage executed by their debtor, a corporation; "the same counsel represented the mortgagor as well as the mortgagee," but neither the latter, nor any officer or agent of the mortgagor, was present to testify, nor did counsel offer in evidence the in-

terrogatories of his clients, although it was peculiarly within their power to explain the suspicious circumstances under which the mortgage was executed, if in fact it evidenced a bona fide transaction.

On the other hand, there are a number of cases reported wherein it was ruled that this exception to the general rule did not apply. One of these is *Schnell* v. *Toomer*, 56 *Ga.* 168, in which it was said: ": Where it does not appear that the party holds back evidence within his power to produce, the non-production of more full and definite evidence than he presents raises no presumption against him." Another is the case of *S., F. & W. Ry.* v. *Gray*, 77 *Ga.* 440, in which the subject is fully and intelligently discussed by Mr. Justice Hall. His statement of the rule governing a case wherein it appears that a party has wilfully withheld or suppressed evidence is now to be found embodied in § 5163 of our new Civil Code. As to the application of that rule, he says: "Ordinarily, and except in specified cases, one credible witness would be deemed sufficient to establish a fact. Code, §§ 3754–5. Generally, it would seem that all persons having knowledge of the transaction need not be produced, and that an inference unfavorable to the party repelling [a disputable presumption relied on by his opponent] would not be warranted because he failed to produce on the trial all persons who were cognizant of the facts from which the presumption to be rebutted arose. . . The objection here urged seems to be as to the deficient quantity, rather than the quality of the testimony. That all the evidence which would have repelled the presumption raised by the casualty against the railroad was not produced, would, upon principle, scarcely seem to warrant a presumption that the company purposely withheld" evidence from the jury. "The principle relied on in this case is, at most, an exception to the general rule, and should be resorted to only in cases where the facts are similar to those in which it has been recognized and enforced." Neither the engineer nor the fireman was produced. It appeared, however, that the former had left the service of the company, had removed to another State, and could not be located; "and that the fireman, at the time

the damage was done, was on the bottom of the tender, attending to his duties, and could not have seen the [plaintiff's colt] on the track as the train approached it." Our decisions are all fully in accord with the doctrine, above announced, that where it does not appear that a party is acting in bad faith in selecting and offering the evidence upon which he elects to rely, no unfavorable inferences can be drawn against him. Thus, in *Harrison* v. *Kiser*, 79 *Ga.* 588, it was held that the defendant could not be said to be withholding evidence, simply because she did not produce a written contract in her possession, when the plaintiff himself had proved that the writing contained a stipulation the effect of which would be to relieve her from all liability. In *E. T., V. & G. Ry. Co.* v. *Kane*, 92 *Ga.* 188, 193, it was ruled that as the plaintiff herself had alleged a fact upon which the company based its defense, the defendant consequently had a right to rely upon this allegation as an admitted fact, and that no unfavorable inference could therefore be drawn against the company because of any failure on its part to call as witnesses its own employees to prove this fact. And in order to remove any suspicion as to his good faith in conducting his cause, it is always the right of a party to explain his failure to call as a witness a person who, though shown to be cognizant of facts material to the issue, is not produced by him. *R. & D. R. R. Co.* v. *Garner*, 91 *Ga.* 27.

If the foregoing decisions can possibly be regarded as failing to dissipate all doubt as to the law on this subject which obtains in Georgia, a casual examination of the recent case of *Anderson* v. *Savannah Press Publishing Co.*, 100 *Ga.* 454, in which Mr. Justice Atkinson, in behalf of a full bench as at present constituted, pronounced the opinion of the court, will suffice to relieve the matter of all difficulty.

In the present case, the plaintiff, who, at the time of the injury complained of, was in the employ of the defendant in the capacity of " coupler and switchman," testified: "Dora Maner was my conductor. . . The balance of the crew were Lawrence Milam, engineer; Wallace Waters, fireman; Mullins, coupler; and one Mr. Pitman was the other helper." Though

he knew each and all of these persons perfectly well, the plaintiff did not undertake to assign any reason why he could not have secured the presence in court of any one of them whom he may have desired to appear as a witness in his behalf—did not even pretend that any one of them was inaccessible to him. He did call as a witness Mullins, the coupler, and elected to stand on the latter's testimony, in addition to his own, with respect to the cause of the injury. The company introduced its conductor, who had, if anything, even a better opportunity than did the plaintiff's witness to observe everything that occurred; also its engineer, who was charged with negligently running its locomotive, and certainly ought to have known the manner in which it was run; also Pitman, the "helper," who was at the time on the engine and had equally as good an opportunity to know the truth in this regard. In addition, the defendant put upon the stand a number of expert witnesses, whose testimony tended to show that it was a physical impossibility for the casualty to have happened from the causes and in the manner testified to by the plaintiff and his witness. The defendant did not, however, introduce its fireman, Waters, who, upon the occasion in question, appears to have been at his post of duty on the engine. There was no showing on the part of the plaintiff that this witness had, at any time prior to or up to the date of the trial, been inaccessible to him. Indeed, the plaintiff closed his case without any attempt to show that Waters was within the jurisdiction of the court, or longer in the company's employ or within its reach, or even in life. This being so, could it be said with any degree of honesty and fairness that a reasonable suspicion of duplicity and cunning artifice hung over the defendant and cast a legitimate doubt upon the righteousness of the cause it was endeavoring to sustain?

This inquiry, though it seems naturally to suggest itself in this connection, is not, however, the *precise* question presented by the case at bar. Consequently, it need not be discussed, as any attempt to arrive at a satisfactory conclusion in regard thereto might be considered as partaking of the nature of "obiter." It further appears from the record now before us,

under the certificate of the presiding judge, that "counsel for defendant, just before the close of testimony for defendant, called into the court-room a witness who had been sworn and put under the rule. When he appeared in the presence of the court and jury, counsel for defendant stated: 'This is the fireman of the crew, and we tender him to the plaintiff only to relieve ourselves from the presumption that would be against us if we did not produce him. If we put him up, it would be cumulative.'" At the risk of being understood as undertaking to decide a question not presented, it may here be remarked parenthetically that the closing sentence of the above statement was grossly improper. See *Johnson* v. *State*, 88 *Ga.* 606. This fact should not, however, influence our decision of the point actually made. *Johnson* v. *Slappey*, 85 *Ga.* 576; *Bennett* v. *State*, 86 *Ga.* 401, 405. The question is: The plaintiff having declined to avail himself of the opportunity thus presented of adding to the evidence already introduced by him, did the mere failure of the company to itself put Waters on the stand indicate and furnish proof of an intention on its part to wilfully suppress the truth, or to withhold from its adversary the means of possessing himself of evidence by which the truth could be established? The correct answer to this question is to be found in the decision rendered by this court in the case of *Davis & Hatcher* v. *Central Railroad*, 75 *Ga.* 645, wherein it was said: "If the fireman had not been accounted for by the defendant, then the jury, on the trial of the case, might have inferred that he had been kept away because he knew something which might have been damaging to defendant. . . But under the circumstances of this case, the fireman being present and open to plaintiffs, no inference could be drawn against defendant because he was not sworn." As the official report sufficiently indicates (and as the record of file in this court conclusively shows), there was in that case, as in the present, "a painful, square conflict" in the testimony. Nevertheless, as it had a right to do, the company chose to rely upon a single witness—its engineer,—though its fireman was also at hand. It was insisted by the plaintiff in error that the company, in order to fully vindicate its diligence, was

under a positive legal duty to also introduce its fireman; but the court held this was not so. Quite naturally, this decision called for the expression of some legal reason upon which it could rest. Accordingly, the rule of law was invoked that, unless certain evidence be peculiarly within the control of one of the parties and inaccessible to the other, no duty devolves upon the one rather than upon the other to produce such evidence or to lay it before the jury, and a mere failure to do so will not justify an unfavorable inference against either party. Incidentally, of course, this involved the decision of the collateral question presented by the peculiar facts of that case, viz.: whether a person in attendance upon the court as a witness, and known to both sides, can properly be said to be accessible to either, not under the exclusive control of one only of the parties.

The decision in that case follows the doctrine laid down in *Emory* v. *Smith*, 54 *Ga.* 273, which was a suit defended by an executrix, who "was present in court at the trial," but was not introduced as a witness. It did not appear that she had any personal knowledge of the facts in controversy, and consequently it could not with fairness be said that her failure to offer herself as a witness amounted to a wilful attempt to withhold evidence from the jury. Accordingly, it was held reversible error for the trial judge "to charge the jury, in effect, that if the executrix could, by going on the stand as a witness, clear up any doubts there might be in the case, the jury might take her failure thus to be a witness into consideration, and might infer from such failure against her." Commenting upon this branch of the case, McCay, Judge, pertinently remarked: "The plaintiff had a right to call her; why not put the presumption on him also?"

In *Thompson* v. *Davitte*, 59 *Ga.* 473, it was held: "There is no invariable presumption of law that evidence is true because a party does not rebut it when in his power. Nor is a party to the cause bound to offer himself as a witness at the peril of having everything taken against him which he might, as a witness, contradict." The trial judge was requested, but refused, to charge "that if a party has it in his power to deny or rebut evidence which tends to disprove his case, and does

not do so, the presumption is that such evidence is true"—
"the propounder, Jacob S. Davitte, being in court and attend-
ing the trial, but not testifying in the case." It did not ap-
pear that this party had any *better* knowledge of the facts in
issue than did the witnesses upon whose testimony he chose
to rely, nor that he had an *exclusive* knowledge of facts he de-
sired to conceal. Therefore, this court held that the trial
judge properly refused to charge as requested.

The decision rendered in *Bird* v. *State*, 50 *Ga.* 585, is also in
point. There the court held that the omission of the accused
"to avail himself of the privilege allowed by the statute to
make a statement to the jury [was] not a matter to be con-
sidered by them in determining defendant's guilt," and it was
error for the trial judge to charge that the jury might take
that fact into consideration in passing upon the case.

The position taken by this court in the cases above cited is
in perfect accord with outside authority. Thus, in Scoville *v.*
Baldwin, 27 Conn. 316, a leading case which has been exten-
sively cited as laying down the correct rule, it was held:
"The omission of a party to call a witness who might equally
have been called by the other party, is no ground for a pre-
sumption that the testimony of the witness would have been
unfavorable. The jury have no right to presume anything as
to his knowledge of facts important to the case." In Bates *v.*
Morris, 101 Ala. 282, it was ruled that: "Where a person,
whose evidence would be competent for either party in an ac-
tion, was in court during the trial and equally accessible to
both parties, it is error to charge the jury that they could
draw an unfavorable inference against one of the parties for
failing to call such person as a witness; and this is true not-
withstanding the witness referred to was the husband and
grantor of the claimant in a claim suit, where the transfer
from him is attacked as fraudulent." The reasoning employed
by Chief Justice Stone, who pronounced the decision of the
court, is simply unanswerable. The following brief extract
from the opinion filed by him will suffice to justify this broad
assertion: "The husband was in court, accessible to either
party, and a competent witness to the same extent for the one

party as for the other; and it is difficult to assign any just reason for imputing the failure to examine him as a witness, as a matter of evidential inference, or as ground of unfavorable presumption for or against the one party, which would not apply to the other." For other cases precisely in point see: Pollak v. Harmon, 94 Ala. 420; Haynes v. McRae, 101 Ala. 318; Crawford v. State, 112 Ala. 3; Nelms v. Steiner, 113 Ala. 562, 576; People v. Sweeney, 41 Hun, 333, 343.

It can not be said in the present case that the defendant, having "more certain and satisfactory" proof within its power, relied upon evidence of a "weaker and more inferior nature." Railway v. Gray, 77 Ga. 444; Haynes v. McRae, supra; Mooney v. Holcomb, 15 Or. 639; Will's Cir. Ev. 142. For "all the evidence was the same in degree, and that of the [fireman] would but have been cumulative." Bleecker v. Johnston, 69 N. Y. 312. Of course, an unfavorable inference may arise where it appears that a party, "in selecting his witnesses to reply to" evidence introduced on the other side, deliberately "chose those who did not know the material facts, rather than those who did, though the latter were equally accessible." Stevenson v. State, 83 Ga. 575. The same is true where a person having full and positive knowledge of the matter in question is not called as a witness, though within reach of the defendant, who introduces no direct proof whatever in reply to positive evidence adduced against him, but confines his defense to an attempt to successfully attack the credit of the witnesses sworn in behalf of his adversary. Hunt v. State, 81 Ga. 140, 143. As was said by Lord Mansfield in Blatch v. Archer, 1 Cowper, 65: "It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted." Obviously, however, this maxim can have no application to a case, like the one at bar, where both parties have deliberately declined to avail themselves of identically the same evidence, equally within the power of either to introduce; for the omission of the one party to offer such evidence is fully met and evenly counterbalanced by a like omission on the part of his opponent.

Suppose the interrogatories of a material witness, sued out at the instance of one party, had been duly returned into court, but were not introduced by such party, nor by his opponent, though equally accessible to the latter; or, suppose it appeared on the trial that one of the parties had in his possession a paper which would probably throw light on the issue, which, though he did not elect to introduce it in his own behalf, he produced and tendered to the opposite side, who, without even glancing at the contents of the paper, declined to lay it before the jury. In neither event, would there be ground for suspicion that either party was endeavoring fraudulently to suppress the truth or to gain an unconscionable advantage over the other. On principle, the present case can not be distinguished, for the plaintiff was afforded full opportunity to "examine" the witness tendered him, and thus ascertain his evidentiary contents. This, counsel for the plaintiff deliberately made his election not to do, fearing, as he practically confesses in his written argument presented to this court, that the "bearded stranger" (?) convoyed "inside the bar" and identified by defendant's counsel, "with unsworn lips" (but standing in his place) "as the one who was fireman on the engine on the night of the injury," would *not* testify to facts prejudicial to the company, and that the latter, in thus offering this witness to its adversary, planned to entrap the plaintiff into a misadventure. Nevertheless, counsel for the plaintiff, in argument before the jury, insisted, with unbecoming inconsistency, "that the thing that showed that plaintiff had the best end of this case was the production of Waters by the defendant, and defendant's failure to put him up as a witness; . . that the failure by defendant to introduce Waters as a witness was an inference of negligence on defendant's part, and a presumption that Waters knew something which, if he told, would hurt defendant's side." Defendant's counsel promptly "requested the court to stop plaintiff's counsel from making such an argument, as it was improper and illegal," and "also requested the court to order a mistrial by reason of this improper argument." But "the court held that plaintiff's counsel had the right to make such an argument, and allowed plaintiff's counsel to proceed

with his argument on this line, and refused to declare a mistrial, or correct or stop plaintiff's counsel from further argument on this line." Subsequently, at the proper time, defendant presented to the court, in writing, a request to charge, expressed in language which was appropriate and entirely in accord with the law as above announced, to the effect that "when the defendant company, in open court, tendered this fireman Waters as a witness to be introduced by plaintiff, if he desired, this was sufficient to relieve the defendant" of the unfavorable presumption insisted on by plaintiff's counsel in his argument to the jury. Not only was this request refused, but the trial judge failed to give its equivalent, or, indeed, any charge whatsoever upon the subject.

The duty of a trial judge in cases where counsel oversteps the bounds within which it is his legal duty to confine his professional zeal, is thus plainly pointed out in section 4419 of the Civil Code: "Where counsel, in the hearing of the jury, make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the same, and by all needful and proper instructions to the jury endeavor to remove the improper impressions from their minds; or, in his discretion, he may order a mistrial, if plaintiff's attorney is the offender."

The question therefore resolves itself into the inquiry, whether or not, as is claimed, plaintiff's counsel, "in the hearing of the jury, [made] statements of prejudicial matters which [were] not in evidence." It must not be overlooked that "counsel should have ample latitude in argument." *Spence* v. *Dasher*, 63 *Ga.* 432. To confine counsel to the restricted realms of logic would be a practical denial of this privilege. So it was said in *Taylor* v. *State*, 83 *Ga.* 659, that "the court could not prevent counsel from drawing illogical deductions from *testimony which had been introduced.*" As a matter of course, "*facts not proved can not be discussed*"; only "illogical conclusions *from facts proved* may be insisted on." *Inman* v. *State*, 72 *Ga.* 278. For there is a rule of practice in this State to the effect that counsel are not at liberty to "travel outside the case."

See *Young* v. *State*, 65 *Ga.* 525; *Wade* v. *State*, Ibid. 756; *Johnson* v. *Slappey*, 85 *Ga.* 576; *Railroad Co.* v. *Powell*, 89 *Ga.* 601; *Railway Co.* v. *Davis*, 95 *Ga.* 293. This rule was thus stated by Mr. Justice Lumpkin in *Washington* v. *State*, 87 *Ga.* 15, 16: "It is the well-settled policy of this court that counsel in the argument of cases should confine their remarks to the law and the evidence, and that in no instance should they be permitted to comment upon extraneous facts prejudicial to the interests or rights of a party, over his objection, *unless such facts be of a kind of which judicial cognizance may be taken without proof.*"

The following instances in which the above rule has been invoked will serve to illustrate its intent and meaning and throw some light upon the question whether or not it is applicable to the facts of the case at bar. In *Bailey & Co.* v. *Ogden*, 75 *Ga.* 877, counsel for plaintiffs insisted upon a right to comment, in his argument before the jury, "upon the law that, when a paper under which a party claimed rights was proved to exist and the same was not offered in evidence, the legal presumption was that it contained something adverse to the" interests of such party; but the trial judge stopped him, saying, "All the evidence concerning a will in this case was ruled out on your motion, and unless you consent for that to go in, you are not authorized to discuss that question, and the jury can not consider it." The ruling of the trial judge was upheld by this court. In *Blackman* v. *State*, 78 *Ga.* 592, "where, before the jury was impaneled, the defendant made a motion for a continuance on the ground of the absence of witnesses, and the court delayed the case and sent for and procured such witnesses, but on the trial they were not introduced," it was held error to permit State's counsel, over objection, "to refer in his argument to what defendant, in his motion for a continuance, had said he could prove, and to mention that the defendant had failed to make such proof, and insist upon this as an evidence of guilt." A new trial was ordered by this court solely upon the ground of the error thus committed. In *Robinson* v. *State*, 82 *Ga.* 535, it was held that State's counsel had no right to "argue to the jury from

the omission of the accused to make a statement," it having been previously ruled (*Bird* v. *State*, 50 *Ga.* 585) that no unfavorable inference could properly be drawn from such omission. In *Johnson* v. *State*, 88 *Ga.* 609, the solicitor-general "argued that the fact that accused's counsel, after hearing the testimony of the prosecutor that [certain witnesses in attendance upon the court] had seen him with a hundred-dollar bill [a material fact in the case], failed thereafter to introduce them as witnesses for the accused to disprove this statement, was a conclusive admission that the witnesses did see him with the bill." In dealing with this point, Mr. Justice Lumpkin, speaking for this court, said: "We feel constrained to allow the accused another hearing. The conclusions drawn by our able, gifted and eloquent brother Wright from the premises stated were unauthorized, and were highly injurious to the accused."

The case of Chase v. City of Chicago, 20 Ill. App. 274, is also in point, and may be referred to as persuasive authority. The plaintiff did not introduce as a witness her husband. He was, however, present in court. Counsel for defendant, after characterizing plaintiff's case as "a blackmailing scheme to extort money out of the city," turned upon her counsel and demanded: "Why didn't you put Mr. Chase upon the witness-stand, John Gibbons?" Twice echoing this demand, counsel continued: "I will tell you why. Because you knew that old, gray-haired man would not perjure himself for you, and you could not perpetrate this fraud and conspiracy with his assistance." The report of the case describes this scene as having been "dramatic." The appellate court added a fitting finale by ordering a new trial on the sole ground that this argument was improper.

The case of Crawford v. State, 112 Ala. 1, is, upon its facts as well as the principle involved, so analogous to the case at bar, it may likewise be cited in this connection. The evidence disclosed that one Boman was an eye-witness to the tragedy under investigation, but, though present in court, he was not called to the stand by either side. "One of defendant's counsel, in his argument, said, in substance, that the State had failed to examine [this] eye-witness to the homicide, who

knew more about it than anybody else present at the time of the killing, and that this was a circumstance to be considered by the jury in favor of the defendant." On objection by the solicitor, the court ruled that this argument was improper, and "to this action of the court the defendant duly excepted." (See pp. 10, 11.) Dealing with this point the reviewing court said (p. 23): "It was proper to restrain the counsel of the defendant from the proposed argument to the jury that the failure of the State to examine Boman as a witness was a circumstance for their consideration. The argument was not legitimate, whether applied to the State or to the defendant; and with equal propriety, if there had been propriety in it, it could have been applied as well to the one as to the other. Boman was in court, as accessible to the one party as to the other; and all that can be properly said is, that neither party deemed it necessary to place him on the stand, adding his testimony to that which had been adduced."

To allow counsel in the present case, after expressly declining the aid of the additional testimony tendered him, to attempt to make capital out of the fact that this identical testimony was not offered by the other side, would seem not only opposed to reason and justice, but violative of the policy of the law as declared in the rule that the best, or highest, evidence of any given fact is required. So long as it was within the power of the plaintiff to show absolutely and conclusively what the fireman knew and would testify in regard to the casualty under investigation, the plaintiff could not, without infringing this imperative rule of evidence, rely upon a mere inference or conjecture as to what this eye-witness of the occurrence would swear if put upon the stand.

There is another rule of law which may, without discussion, be adverted to as having a bearing upon the present case, because limiting in a measure the right of counsel to indulge in argument of questionable propriety. "It is the duty of attorneys at law: . . To employ, for the purpose of maintaining the causes confided to them, such means only as are consistent with truth, and never to seek to mislead the judges or juries by any artifice or false statement of the law." Civil Code,

§ 4427.  It can not be deemed the intent and policy of the law, in expressly conferring any given privilege upon a suitor, to attach thereto a condition that if such privilege is exercised by him, his conduct will be regarded with distrust and the righteousness of his cause looked upon with suspicion.  As the writer had occasion to remark in the recent case of *McBride &amp; Co.* v. *Macon Telegraph Publishing Co.* (post), "no unfavorable inference can arise against a party so long as he is acting strictly within his legal rights."  For instance, a defendant has a legal right to demur to his opponent's petition; to file inconsistent pleas; to object to illegal evidence when offered; to cross-examine his opponent's witnesses at length, or only as to a single point, or not at all; to make a motion for a nonsuit at the close of the plaintiff's case; to stand on the case as made out by the latter, or attempt to vindicate himself by the introduction of competent evidence.  His election to avail himself of any or all of these legal rights can not be regarded as furnishing the basis for any inference that he resorts to these means of defense only because he knows that, upon the real merits of the case, he can not but fail.  For counsel to argue to the jury that they should reach their conclusion by resort to a test or process not sanctioned by law, is not only "traveling outside the case," but falls little short of contempt of court.  It is not the right of a party, or his counsel, to arraign the law itself and attack its wisdom; certainly not when such party voluntarily goes into court and asks that the law — as it stands, and not as he may think it should be — shall be fairly, impartially and correctly administered.

There was, in the present case, not a scintilla of evidence even vaguely tending to show a disposition on the part of the defendant to withhold or suppress the truth.  As has been seen, the law itself did not supply, in lieu of such proof, any presumption or inference whatsoever upon which counsel could rely as a basis for his attack upon the defendant concerning its motive in not introducing *all* the evidence within its reach. Accordingly, the good faith of the latter in selecting and offering the evidence upon which it elected to stand was not ever so remotely brought into issue, and a totally unfounded sus-

picion in regard thereto could serve as no proper guide to the jury in reaching their conclusion upon the questions actually presented and legitimately before them for determination. That the unwarranted argument of plaintiff's counsel was calculated to unduly prejudice the defendant's cause, there can be no reasonable doubt; that it actually had this effect is evidenced by the fact that although the great preponderance of proof was apparently on the side of the defendant, the jury nevertheless returned a verdict which utterly repudiated its claim that its defense was righteous and meritorious.