## INMAN *vs.* THE STATE OF GEORGIA.

1. The constitutional right of every person charged with an offence against the laws of this state to be furnished, on demand, with a copy of the accusation and a list of the witnesses "on whose testimony the charge against him is founded," entitles the accused to a copy of the indictment and a list of the witnesses who gave testimony before the grand jury; but when he has been furnished with such copy and list, on demand, another witness, whose name was not on the list, is not rendered incompetent to testify on the trial.

2. Where in a criminal case eleven jurors had been procured out of the panel of forty-eight, and there remained but one to be procured and the court asked defendant's counsel if they were willing to take a panel of twelve jurors from those remaining on the list, and select from that panel the remaining juror, to which defendant's counsel replied that they were willing, this was a waiver of the array; especially as no demand for the array was made, no cause of challenge to the array was intimated, and no statement was made denying the waiving of the array.

(*a.*) This case differs from 62 *Ga.*, 731.

3. It is legitimate for counsel in argument to allude to what has transpired in the case from the time it was called through its entire progress, and the conduct of the party or his counsel in connection therewith is a proper subject for comment. Such matters are necessarily in the discretion of the court, and that discretion will not be controlled except in a case of flagrant abuse; it must appear that the accused has received some positive injury or been denied some material right.

4. Where the state introduced in evidence the sworn statement of the accused before the coroner's jury, it was like all other testimony in the case; it was for the jury to consider, and its credit and weight were for them. They were not required to believe it unless contradicted by two witnesses or one witness and corroborating circumstances.

5. That the court charged as follows: "Has the state shown to your satisfaction that the accused is guilty of the crime with which he stands charged? Does this array of facts and circumstances in proof before you show beyond reasonable doubt—do they convince you, beyond all reasonable doubt, that he is guilty of the crime?" was not an expression of opinion by the court as to what had been proved, and does not require a new trial.

6. In regard to the right of the jury to recommend imprisonment for life, the better practice is for the court to call the attention of the jury to the law and merely state to them that, if they think proper, they may, in addition to the verdict of guilty, recommend that defendant be imprisoned in the penitentiary for life. This was sub-

stantially done in the present case, and the language of the court was not such as was calculated to deprive, circumscribe or restrict the jury in respect to the exercise of their right of recommendation.

7. The verdict is supported by the evidence, and the presiding judge being satisfied with the finding, we will not interfere.

April 8, 1884.

Criminal Law. Practice in Superior Court. Jurors. Charge of Court. Evidence. Before Judge CARSWELL. Emanuel Superior Court. November Term, 1883.

To the report contained in the decision, it is only necessary to add the following:

Alfred Inman was indicted for the murder of his wife, Mary J. Inman. It is unnecessary to set out the conflicting and voluminous evidence in detail. It is sufficient to state that the evidence on which the state relied for a conviction was, in brief, as follows: In the forenoon of February 16, 1883, defendant rode up to the house of one Bishop, and asked his assistance, stating that his mare had run away with his wife and thrown her, nearly killing her. He then rode back, and one or two persons followed him to the place where the corpse was. He preceded them slightly, and when they arrived, they found him bending over her, calling her by name. A conveyance was brought, and the body placed in it and carried to the house. The defendant stated that a pine burr had fallen on the mare which his wife was riding; that the mare had jumped and run away, and his wife had been thrown and dragged by her feet, which were hung in the stirrup leathers; that the plowline, which served as reins, had caught on a small stump, and the mare had run round it kicking; that he ran up, stopped her and freed his wife, who was not then dead, and he had laid her down and gone for assistance. Some of the parties who received this information looked over the ground the same day and only a short time after the death; a coroner's jury were empanelled and held an inquest on the next day, and the grounds and surroundings were thoroughly examined. The place where the body was

found was in a patch of woods, about half way between the house of Inman and that of Bishop, and about half a mile from each. The body, when first seen by others than the husband, lay on its face, and under the head, in a slight indentation in the ground, was a little pool of blood; a few feet away, at the base of a tree, were found spots of blood, as though spattered there. The head of the deceased was some ten feet from the stump where the defendant said the reins caught, and her feet were towards it. The stump showed no signs of being rubbed by a rope or reins; there was loose bark on it, which one of those inspecting it took off by merely passing his hand over the surface. No horse tracks were found circling about the stump nor anywhere around it, except in the pathway which ran past, and which was three or four feet from it, and these appeared to have been made by a horse going at a slow gait, and not in a run. A few feet from the dead body was found a small lightwood knot, and a little farther off, a larger knot or a portion of a limb. On both of these there were blood and hair. The wounds on the corpse were on the upper portion of the head, where the skull was broken in. There were lesser wounds on the sides or front portion of the head, and on the hands, which were severely wounded. No scratch or bruise was found about the feet, legs or other portion of the body, nor was the clothing of the deceased torn or soiled, nor was it disarranged to any considerable extent when the first witnesses reached the scene of the death. A search was made for the place where the pine knots came from. The larger one had a moist side with dirt on it, and a hole or "bed" in the ground was found some feet away, into which it fitted exactly. There was also an old lightwood log near by, which had upon it an identation, as though a knot had been recently taken from it. Into this the smaller knot was fitted, and it was found to correspond therewith. One of the knots was fitted into the wounds on the head of the deceased, and the indentations in the head corresponded with the protu-

berances on the knot. A short time before this, the deceased had received several hundred dollars for some property. When the body was being prepared for burial, the pockets of her dress were found turned inside out. A gold necklace, which she habitually wore, was gone and could not be found. In preparing to buy a coffin, defendant told one of the witnesses to look about the house for money; as he had none; this was done, but the sum which she had recently received was not found. On the coroner's inquest, defendant was made a witness, and admitted the presence of himself and wife alone at the time of her death. He stated that he could not account for the lightwood knots, nor could he account for his wife's pockets being turned wrong-side outwards, unless she so turned them while hunting for her snuff, which he said she had been doing just before her death. Otherwise, he accounted for the death in the same general manner as that in which he stated it on the day previous. When the neighbors went to the place where it occurred, after the death of Mrs. Inman, a witness noticed certain small spots of blood on the clothes of defendant, but thought nothing of it at the time, as it was supposed that he had handled the body of his wife, and that it might in that way have got on him.

The evidence for the defendant went to show circumstances to confirm the position that the death was caused by the runaway horse.

The jury found the defendant guilty. He moved for a new trial, on the grounds set out in the decision, which was overruled, and he excepted.

J. S. HOOK; H. D. D. TWIGGS; HINES & ROGERS, for plaintiff in error.

C. ANDERSON, attorney general; R. L. GAMBLE, Jr., solicitor general, for the state.

BLANDFORD, Justice.

The plaintiff in error was indicted in the superior court of Emanuel county for the murder of his wife, Mary Inman; he was tried and convicted. He made a motion for new trial on several grounds, which were overruled by the court, and to this ruling, refusing the new trial, the defendant excepted, and now here assigns as error the refusal by the court to grant the new trial prayed for.

(1.) The first error assigned is, "that defendant, before arraignment and before pleading to the indictment, demanded a copy of the indictment and a list of the witnesses on whose testimony the charge against him was founded. The solicitor general furnished defendant with a list of the witnesses and a copy of the indictment, when so demanded. Subsequently, and during the trial of the case, but before any witness was sworn, the court, over the objection of counsel for defendant, permitted the solicitor general to swear and examine as a witness for the state E.A.Nash, to make out the charge against the accused. The counsel for the state, before the examination of any witness for the prosecution, notified counsel for accused that he had two witnesses besides those on the list furnished defendant, who would be sworn for the state, and that Nash was one of them."

The court, in explanation of this ground, states that, on demand of defendant's counsel, they were furnished with a copy of the indictment and a list of the state's witnesses. Before any evidence had been introduced in the case, the defendant's counsel were furnished with the names of two additional witnesses for the state, one of whom, Col. Nash, was sworn.

(2.) After the first panel of forty-eight jurors had been exhausted, a second panel of twelve jurors was made up. This second panel was not put upon the defendant, he not waiving the array and the putting this panel upon him.

The court makes this explanation as to this ground: "A

v 72—19

list of ninety jurors was called, and of these a panel of forty-eight were called and put upon defendant. There was no challenge to the array, and eleven jurors were chosen and sworn from this panel of forty-eight. The court asked counsel if they were willing to take a panel of twelve jurors from those remaining on the list, and to select from the panel the remaining juror. Defendant's counsel replied they were willing to do so. Whereupon twelve jurors were called; there was no challenge to the array, and they were sworn upon their *voire dire*, and from them the twelfth juror was chosen and sworn."

.(3.) Counsel for defendant objected to the solicitor general stating, in conclusion, to the jury, that counsel for the defendant had "dilly dallied" with this case; that they had moved for a continuance at the last term of this court, upon the absence of the witness, Mark Jenkins, and at this term counsel for defendant had moved for a continuance on the same ground; that the court had sent for the witness and had him brought into court, and yet counsel for defendant had not introduced this witness. Counsel for defendant objected to these statements, on the ground that there was no evidence of these facts, and that such com- ments were improper.

The court makes this explanation as to this ground: The solicitor general remarked that, when this case was called for trial during the present term of the court, the defendant moved for a continuance on the ground of the absence of a witness, Mark Jenkins, and when this witness was produced in court he did not have him sworn as a witness. The court held that state's counsel had the right to comment on the conduct of counsel and defendant during the present trial.

(4.) Because the court refused to give in charge to the jury the following request of counsel for defendant: "If you find from the evidence that the state has introduced in evidence the sworn testimony of defendant before the coroner's inquest, before the state can disprove his sworn

statements before the inquest, it must be overcome by the testimony of two witnesses or by one witness and corroborating circumstances."

(5.) Because the court, after having charged as follows, on the request of defendant's counsel: "If the state has introduced in evidence the sworn statement of defendant before the coroner's inquest, and if you find from this testimony, if the defendant has given an account of the manner in which his wife was killed, then all he swore before the inquest is evidence before you in this case," added, "and you can give to it such credit as you think it entitled."

(6.) Because the court refused to charge, as requested, " That no amount or number of proved circumstances from which it may be inferred that defendant's sworn statement is false, will do to disprove or overcome it, but there must be at least one witness directly disproving the facts sworn to by him, and in addition circumstances corroborating this witness."

(7.) Because the court erred in the following charge to the jury : " Has the state shown to your satisfaction that the accused is guilty of the crime with which he stands charged ?  Does this array of facts and circumstances in proof before you show beyond all reasonable doubt,—do they convince you beyond all reasonable doubt that he is guilty of the crime ?"

(8.) Because the court erred in the following charge : " If you find him guilty, and the case be one in which you think you are justified in doing so, the facts and circumstances justify you in doing so, you can say in your verdict that 'we recommend that he be imprisoned in the penitentiary for life ;' and upon that recommendation, it would be my duty to inflict that punishment upon him."

(9.) Because the verdict is contrary to law, contrary to evidence, and without evidence to support it.

1. The first error assigned is, that the court allowed, over the objection of the defendant, the witness, Nash, to be sworn and testify in behalf of the state, because his

name was not on the list of the names of witnesses furnished the accused on demand made by him; and it is insisted by the learned and distinguished counsel for defendant, the plaintiff in error, that, by the bill of rights embraced in the constitution of this state, Code, §4997, upon demand by the accused, the state must furnish a list of all the witnesses which are to be produced against the accused on the trial to make out the charge against him, as is required in cases of treason in England, and that the bill of rights of this state above cited alters and amends §4634 of the Code in this respect. We do not concur in this view. The bill of rights provides "that every person charged with an offence against the laws of this state shall be furnished, on demand, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded." The words, "on whose testimony the charge against him is founded," are equivalent to the words used in §4634 of the Code, "the witnesses who gave testimony before the grand jury." On whose testimony is the charge against the accused founded? Is it not founded on the testimony of those who gave testimony before the grand jury? The grand jury bring the charge, and it must be founded on something; this something must be the testimony of witnesses sworn and examined by them. Under §4634 of the Code, the accused was entitled to be furnished with a copy of the indictment and a list of the witnesses who gave testimony before the grand jury, before arraignment. But by the bill of rights the accused is only entitled to a copy of the accusation and list of witnesses upon which the same is founded, upon demand. So we think the bill of rights modifies the Code, §4634, to this extent and no more, that the accused shall be furnished with a copy of the indictment and lists of witnesses who gave testimony before the grand jury, on demand. The accused had the full measure of his rights in this respect, and there was no error in allowing the witness, Nash, to be sworn and testify in this case.

2. As to the second assignment of error, we are all of opinion, under the circumstances of this case, that when eleven jorors had been procured out of the panel of forty-eight, and there remained but one to be procured; when the court asked the defendant's counsel if they were willing to take a panel of twelve jurors from those remaining on the lists, and select from that panel the remaining juror, defendant's counsel replied that they were willing to do so. This was, we think, a waiver of the array, no intention or desire on the part of defendant having been intimated or signified on their part of a challenge to the array. They agreed to take the twelve men whose names were on the lists, and to select from these twelve the remaining juror. This was equivalent to waiving the array, particularly as they made no demand for the array to be put on the accused, and intimated no cause of challenge to the array, and did not state that they would not waive the array, or that they would not waive anything, as was done in the case of *Cochran vs. State*, 62 *Ga.*, 731. If the accused had demanded that the array of twelve men should be put upon him, and if this had been refused, it would have been error. If, when the defendant's counsel was asked by the court if they would take the remaining twelve jurors on the lists and select therefrom the remaining juror, they had replied that they waived nothing, or would consent to nothing, then it would have been error not to put the array of twelve on the accused. The accused is not bound to waive or consent to anything not required by law, yet if he or his counsel, in open court, does waive a right of this sort, or enters into an agreement by which such right is waived, he will be bound thereby; and the action of the court, founded on such waiver or consent, will constitute no ground of error which will authorize this court to reverse it.

3. The third assignment of error refers to the remarks of the solicitor general in conclusion. The remark of the court under this ground is, that the remarks of the solicit-

or general were in reference to the conduct of counsel for the accused when the case was called, in relation to the continuance of the case for the absence of a witness who had made his appearance, but who had not been sworn as a witness in the case. The court held that the conduct of the accused and his counsel during the continuance of the trial were the proper subjects of comment by the counsel engaged in the case. Counsel are allowed the largest liberty in the argument of cases before juries, and whether the argument be logical or illogical, or whether the inferences and deductions drawn by them are correct or not, this court will have no power to intervene. Facts not proved cannot be discussed, but illogical conclusions from facts proved may be insisted upon, and there is no remedy; but in this case we think it was legitimate for counsel to allude to what had transpired in the case from the time it was called through its whole proceeding, and the conduct of the party or his counsel in connection therewith was the proper subject of comment, and there was no error on the part of the court in allowing the comments of the solicitor general in this case.

The judges of the superior courts are charged with the administration of the laws in their respective jurisdictions; how and in what manner the proceedings of their courts shall be regulated and governed must, of necessity, rest largely in their discretion; the proper administration of the law demands this. And it would take a very flagrant violation of this discretion to authorize this court to interfere; it must be such a case as, under all the facts and circumstances, shows that the accused had received some positive injury or been denied some material right. Such does not appear to have taken place in this case.

4. The fourth, fifth and sixth assignments of error may be considered together, as they relate to the same subject-matter.

The state had introduced in evidence the sworn statements of the accused before the jury of inquest. The

court instructed the jury that this statement was evidence before them, and the jury could give to it such credit as they thought it entitled to.    Counsel for plaintiff in error insist that the jury should believe it, unless contradicted by two witnesses or one witness and corroborating circumstances.

The rule laid down by the court, we think, was the right one.    This evidence was like all the other testimony in the case; it was for the jury to consider; its credit and weight were for their determination; and we know of no law which would authorize the view insisted on by counsel for plaintiff in error.

5. The seventh assignment of error is as to a certain expression of the court in his charge to the jury.    The expression being, " Has the state shown to your satisfaction that the accused is guilty of the crime with which he stands charged?    Does this array of facts and circumstances in proof before you show beyond all reasonable doubt,—do they convince you, beyond all reasonable doubt, that he is guilty of the crime ?"

The plaintiff in error insists that this charge is an expression of opinion on the part of the court as to the facts proved, and that the animus of the charge is calculated to injure the cause of the defendant with the jury.    We fail to see any expression by the court of any opinion as to what has or has not been proved in the case.    The animus of the charge seems to be on the line of the law.    We cannot lay down any form by which the judges of the superior courts must be guided and follow in their charges and instructions to the jury ; each judge must be allowed to pursue and follow his own taste and inclination in such matters, and unless he violates some rule of law, this court cannot interfere therewith.

6. The eighth assignment of error complains that the court restricted the jury in the exercise of their right to recommend the defendant to be imprisoned in the penitentiary for life.    The errors complained of are : " If you

find him guilty, and the case be one you think you are justified in doing so—the facts and circumstances justify you in doing so—you can say in your verdict, 'we recommend he be imprisoned in the penitentiary for life.'"

We do not think that the language used by the court was calculated to deprive, circumscribe or restrict the jury in the exercise of their rights to recommend that the accused be imprisoned for life in the penitentiary; in this respect it differs from *Hill vs. State*, decided at the last term of the court. Yet, we think in cases like this, the better practice would be for the court to call the attention of the jury to the law, and merely state to them, if they thought proper they might, in addition to the verdict of guilty, recommend that defendant be imprisoned in the penitentiary for life. This was substantially done by the court in this case.

7. The last assignment of error is, that the verdict is contrary to law and evidence, and whether this ground be true, depends upon the evidence in the case.

The record shows a state of facts which would warrant the jury in finding the verdict which they did. If they believed the witnesses for the state, then the verdict was authorized from the evidence. This was a matter for the jury. The court who tried the case was satisfied with the finding, and we are not authorized to interfere. Code, §3717.

Let the judgment of the court below be affirmed.