## STRATHER *v.* THE UNITED STATES.

CRIMINAL LAW; MURDER; VERDICT, QUALIFICATION OF;
CHARGE TO JURY.

1. The act of Congress of January 15, 1897, providing that where an accused is found guilty of murder or rape under Secs. 5339 and 5345, R. S. U. S., the jury may qualify their verdict by adding thereto "without capital punishment," is in force in this District.

2. In the trial of an accused, indicted for murder, it is not error for the trial court after charging the jury that it is their right under that act of Congress, to add to their verdict "without capital punishment," to state that it was doubtless the intention of Congress to give the jury the power of so qualifying their verdict, where there are circumstances shown by the evidence of a palliating nature, but if they believe there are no such circumstances, it is their duty not to so qualify it, but to leave the penalty as it stands; Mr. Justice SHEPARD *dissenting.*

No. 795.   Submitted May 17, 1898.   Decided June 7, 1898.

HEARING on an appeal by a defendant indicted for and convicted of murder.   *Judgment affirmed.*

STATEMENT OF THE CASE.

At the trial in the court below, Mr. Justice BRADLEY, in his charge to the jury, said:

"It has now become my duty to submit to you some in-

structions upon the law that shall govern you in your deliberations upon the evidence that has been adduced in your hearing, and when I have so done, my duty shall have been performed and the whole responsibility in this case and its outcome will rest upon you.

"The indictment charges the defendant with the murder of Rosa Talbot. The testimony has established conclusively, without the admission of the defendant upon the stand when he testified as a witness, that the death of Rosa Talbot was accomplished by the defendant by the use of a hatchet, by means of which the defendant made several mortal wounds upon the head of the deceased woman. The defendant took the stand as a witness in his own behalf, and he has admitted that he made the wounds that caused the death of this woman.

"He has admitted that the woman was not his wife, although they were living together as man and wife. The testimony of one witness who was produced for the purpose of adding something to your information in this case, that the court was obliged under the rules of evidence to exclude, showed that the deceased woman was the wife of that witness. This adulterous intercourse between this defendant and the woman that he killed, resulted perhaps not unnaturally, in a homicide, and you are to determine upon the evidence whether a crime was committed in the perpetration of that homicide, and, if so, what was the nature of that crime.

"While admitting that he inflicted the blows upon the head of the deceased woman that caused her death, the defendant defends as against the ordinary consequences of such an act by the claim—and his testimony in support of the claim—that this act of his that accomplished the death of his victim was a necessary act for his own protection; that he killed her in self-defense. If that is not so, he says, if he were not justified in defending himself against an assault made by her upon him, which was of such aggravated

nature as compelled him to act as he did, yet the nature of that assault was such that he was rendered furiously angry; that his reason was dethroned for the time being, and that he struck these fatal blows under the influence of passion recently and reasonably excited, and if he is not guiltless under the law, in your judgment, then he is guilty only of manslaughter.

"The indictment charges that the defendant is guilty of murder. The indictment, however, is but a charge. It is the assertion of the fact. Under such an indictment the jury may find any one of several verdicts, as the evidence may satisfy them under their oaths that such verdict is the proper and just one under all the circumstances in the case. The jury may render a verdict of not guilty if they are satisfied from the evidence that the defendant in killing this woman was justified by the law of self-defense. The jury may return a verdict of guilty of manslaughter under such an indictment as this, if not satisfied that the defendant perpetrated the act under the necessity of the law of self-defense, but did it in the heat of passion, excited upon and by a reasonable provocation, or the jury may return a verdict of guilty as indicted, if they are satisfied by the evidence that such verdict should be returned.

"It becomes necessary, therefore, for the court to give you some suggestions as to what constitutes murder and what constitutes manslaughter and what constitutes the law of self-defense. In so doing, for the purpose of convenience and as the instruction has received the approval of a higher court, I will read the instructions that were given by me in another case:

"'Murder is the unlawful killing of a human being by a person of sound memory and discretion, with malice aforethought. Manslaughter is the unlawful killing of a human being by a person of sound memory and discretion, without malice. The essential difference between the two crimes is this: that in murder, malice must be established by the evi-

dence, for that is the essence of the crime; but in manslaughter, that element is presumed to be wanting.    Malice may be expressly indicated by evidence of declarations which evince a malignant disposition and purpose, such as threats to kill. Malice may be implied from circumstances, and they may be as forceful and indicative of its existence as the most direct expressions by word of mouth, as for instance, the character of the assault and the means used to accomplish the homicide.

"'Malice need not be solely directed to the deceased.    It does not mean only an expression of hatred or ill will to an individual, but it means any wicked or mischievous intention of the mind prompting to an act.    It is not necessary to make out the crime of murder, to show that the witness had any enmity to the deceased.

"'Evidence of the absence of ill will can not furnish an accused person with any defense when it is proved that the act of killing was intentional and done without any justifiable cause.

"'Malice is presumed or implied when a man commits an unlawful act unaccompanied by circumstances justifying its commission.    It is then presumed that he has acted advisedly and with an intent to produce the natural consequences of such an act.'

"Inasmuch as a wound from a hatchet, used as the testimony in this case indicates that implement was used in accomplishing the death of the deceased, is likely to produce death, the court instructs you that such an instrument is a deadly weapon, and when a wound is made by a deadly weapon, which may and actually does cause death, if made without such provocation or under such circumstances as reduce the crime to manslaughter, or under such circumstances as fail to indicate that any crime has been committed, such act is deemed malicious and the killing is murder.

"'Malice aforethought, therefore, may mean that evil impulse which prompts the execution of an unlawful act upon

another that may and does result in death.   It may exist
as the result of deliberation and premeditation for minutes,
hours, days, or any length of time before the act that is its
climax and chief expression is committed, and it may exist
for no appreciable time before.   It may be as slow in form-
ing as would consume weeks in deliberation and premedita-
tion, and it may be as quick in conception and purpose as
the flash of thought.   Premeditation and deliberation may
be elements of malice aforethought, but they are not essen-
tial to its existence, and malice aforethought, in the sense of
the law, frequently does exist without either deliberation or
premeditation.

" 'There is no particular period during which it is neces-
sary that malice should have existed or the prisoner should
have contemplated the homicide.   If, for example, the in-
tent to kill or to do other great bodily harm is executed the
instant it springs into the mind, the offense is as truly mur-
der as if it had existed there for a longer period.

"'An unlawful killing is a killing without justifiable or ex
cusable cause.   Such killing, if malicious, is murder, and if
without malice is manslaughter.   If one kill another by an
act of carelessness or negligence, or in the heat of sudden pas-
sion excited by recent, reasonable provocation, or under cir-
cumstances of an actual but not a reasonable apprehension
of serious bodily harm or the loss of life at the hands of the
person killed, and without malice, it is unlawful and he is
guilty of manslaughter.'

"As to reasonable provocation it may be well to say that
words, however opprobrious or improper they may be, are
never judged to be reasonable provocation for passion; nei-
ther is a slight blow from the hand of a person who is inferior
in strength—for instance, a slight blow from the hand of a
child, or a slight blow from the hand of a woman.

" It is impossible, however, for the court to lay down a defi-
nite, fixed rule as to what will justify and be considered
reasonable provocation.   It is a question that must always

be left to the jury, and with the jury the question always must be whether, putting yourselves in the place of the party who claims that he was reasonably provoked and his passion so excited by an act that he killed the party exciting his passion in the heat of that passion, the circumstance relied upon as provocation, as indicating reasonable provocation, is such a circumstance as a reasonable man, situated as he was, would have been excited by it tô the degree of passion which would lead him to perpetrate a homicide.

" The right of self-defense is the right to immunity from the consequences of acts done under the actual or reasonably apparent necessity for the protection of life or limb. If one who is free from fault himself, who has not sought to bring about the difficulty, is assaulted by another in such a serious manner as to cause him to reasonably and honestly apprehend imminent danger to himself, either of loss of life or great bodily harm from his assailant, from which he has no way of escape, kills his assailant, he is held justified by the law of necessity, and is not guilty of either murder or manslaughter.

" The first question for you to determine, taking the several questions in their inverse order, would be whether the evidence that you have heard is of such character as to justify you in acquitting the defendant on the ground that the act that he perpetrated was perpetrated under the necessity of self-defense.

" In order to justify that claim, it should appear to you by the evidence that the assault that the defendant has claimed was made upon him by the deceased woman was of such character and made under such circumstances that the defendant had reason to believe, had reason to apprehend, and honestly did apprehend from that assault either the loss of his own life or great bodily harm to himself.

" Great bodily harm, you will readily see, does not mean a slight blow with the hand or a blow with anything that was of such a nature as not likely either to cause death or

to occasion great bodily harm. A man is not justified in
killing his assailant if he simply apprehends a slight bruise,
or if he apprehends anything less than great bodily harm
or loss of life. He must not only apprehend such great bodily
harm or loss of life—honestly apprehend it—but the circum-
stances must be such that you, putting yourselves in his place,
as reasonable men, would say that there was reason to
apprehend such great harm to himself or loss of life.

"Has the defendant made out such a case as indicates a
reasonable or apparent necessity to protect himself against
an assault from this woman by the use of a deadly weapon
upon her? In determining the proper answer to that ques-
tion you should consider all the circumstances that have
been detailed in evidence; consider the relations of the par-
ties. They were not married. They were under no neces-
sity of living together. They were living together in open
violation of the law. Consider such testimony as you have
had adduced in your hearing of former quarrels, of former
assaults, and the manner in which such former quarrels or
such former assaults affected the defendant, as indicating
the probability or improbability of his being impressed at
the time that she, as he said, made an assault upon him, with
the necessity of protecting himself from an injury at her
hands by the use of a deadly weapon. Consider the relative
size and weight and strength of this man and the woman.

"And with reference to this question, whether these blows
were struck for the purpose of defending his own body from
serious injury, consider the character of the blows, the
weapon used, the number of blows that were inflicted, and
from all these circumstances ascertain whether the claim
by the defendant that he was acting in self-defense is well
founded. If you believe from the evidence that this claim
is well founded, in view of the statement of the law, as the
court has given it to you, you should return a verdict of not
guilty. If, however, you are not satisfied that the defense
has been made out, you should inquire, in the next place,

whether only the crime of manslaughter has been committed.

"You should not convict this defendant of manslaughter unless you are satisfied of his guilt, unless the evidence is such that you are convinced of his guilt, unless you believe from the evidence, beyond a reasonable doubt, that he is guilty.

"A reasonable doubt is a doubt that reasonable men would entertain of guilt after listening to the evidence and carefully scrutinizing it and weighing it. It does not mean any sort of captious doubt that the mind of man may raise, for, as I have had frequent occasion to say, some men are so constituted that they will doubt anything—they will doubt the evidence of their own senses—but it means such a doubt as reasonable men entertain after carefully weighing and scrutinizing the evidence. The defendant is entitled to the benefit of such doubt, and he should not be convicted of either manslaughter or murder if the jury entertain such a doubt.

"As I have already indicated to you, gentlemen, manslaughter is an unlawful killing without malice. Manslaughter may be a mere act of negligence. Manslaughter may be made out by circumstances that indicate that the party perpetrating the homicide, while not acting in self-defense, yet committed the homicide in the heat of passion that was excited upon recent, reasonable provocation. Manslaughter may also be indicated by such state of facts as show that the party perpetrating the homicide, honestly believing that his life was in danger, but forming such apprehension carelessly and negligently, under circumstances that showed the jury that he ought not to have entertained any such apprehension, yet kills under the impulse of such fear.

"It is for you to say whether the circumstances that have been detailed by the defendant are such as would bring his act within the definition that the court has given you and within the limitation of the law of manslaughter as it has

been asked in behalf of the defendant. It is not enough that the homicide is perpetrated in the heat of passion. If a man perpetrates a homicide in the heat of passion that is not reasonably excited, passion that ought not to have been excited by the circumstances which he claims excited him, then he has no right to claim that the homicide is man-slaughter because perpetrated in the heat of passion. The heat of passion must be such passion as is excited by recent, reasonable provocation.

" Did the defendant have such reasonable provocation ? That is the question that the court will submit absolutely to you, gentlemen. I can not throw any further light upon it than I have. The question is simply this: Whether you, as reasonable men, putting yourselves in the place of the defendant at the time he says he was attacked by the de-ceased, if you believe that he was attacked, should have been so angry, so excited to passion of such degree and extent as would lead you to perpetrate the act that he com-mitted upon the head of this woman?

"If you do not believe that the homicide was justified by the apparent necessity of self-defense, as the court has de-fined that to you, or that the mortal wounds were inflicted upon the deceased by the defendant in the heat of passion, excited by a reasonable provocation, and you do believe from the evidence, beyond a reasonable doubt, as the court has defined that expression to you, that the defendant made those wounds upon the deceased wilfully and ma-liciously, your verdict should be guilty as indicted.

"The court has defined to you malice. Whether malice existed in this case, as the court has already intimated to you, is to be determined by the testimony, if you credit it, of previous threats, and the denial of having made such threats by the defendant, the character of the wounds that were inflicted, their number, and the situation and relation of the parties to this conflict at the time the several wounds were made, the relative size and weight of the two combat-

ants, if you believe there was a combat, and all the other circumstances in evidence.

"If you should reach the conclusion, gentlemen of the jury, that your verdict should be guilty as indicted, it is your right, under a recent act of Congress, passed in January, 1897, to add to this verdict "without capital punishment."

"As I had occasion to remark yesterday, the jury have this power in any given case. The court can not control your act at all. The court can only advise you as to the law. The responsibility is entirely with you, and you can render such verdict as you please. I mean that you have the power to do it. You can render a verdict of not guilty in a case where the evidence clearly shows guilt. Of course such action on the part of the jury would be a direct violation of their oaths. If the jury believed that a man was guilty, and simply out of pity or sympathy or mercy rendered a verdict of not guilty, they would violate their oaths.

"I have no doubt that this act of Congress was intended to serve some useful purpose. The penalty for murder has not been disturbed by this act of Congress; it is fixed by law; the jury neither make nor unmake it. Doubtless the intention of the legislature was this: that in a case in which the jury reach the conclusion that the party on trial is guilty of murder, and circumstances are shown by the evidence that are of a palliating nature, they may give the defendant the benefit of those palliating circumstances and say in their verdict, "without capital punishment." If, however, the jury believe that there are no palliating circumstances, it is their duty not to add anything, but to leave the penalty as it stands. It may be that a provision of this kind in the law was intended to apply to a case somewhat like that suggested by the District Attorney. Suppose a man knowing that his wife had been in improper relations with another man and roused to anger by such knowledge, but postponing from time to time, while he meets this man, the execution of his

vengeance upon him, he finally concludes to and does kill him, that would be murder—a clear case of murder under the law; but those circumstances might be such as would convince the jury that the extreme penalty of the law ought not to be inflicted. There may be other cases. I simply give that as an illustration. But the object of this penalty, gentlemen of the jury, is to protect society; and the jury should not interfere with it under any circumstances, unless the circumstances are such as to satisfy them that this provision should be added to the verdict.

"I should say right here, gentlemen, that if you reach the conclusion of guilt—'Guilty as indicted'—it is your duty to return that verdict; and unless you unanimously agree that the verdict should be qualified as the statute provides that you may qualify it, there can be no qualification. It must be the unanimous conclusion of the jury. The question for you to ask yourselves is this: Are the circumstances in this case such (if you reach the conclusion that the defendant is guilty as indicted) as to require you, upon your oaths, to interfere with the penalty fixed by law?

"The defendant and the woman he slew were living together in adultery. It may be that neither of them was a good and useful citizen in this community; but he is entitled to the protection of the law. He should not be convicted unless the evidence justifies a verdict of guilty, as the court has explained to you. She was also entitled to the protection of the law, and the mere fact that she was a woman of loose morals, living in open adultery with this man, should make no difference whatever with you in your judgment upon the evidence.

"The responsibility of the outcome of this case is with you entirely. The court can not help you any further. You are not responsible for the law. The law has been made by the Congress of the United States and has received the approval of the chief executive. It was made for your protection and for mine. The law should be vindicated in any

case and every case where the evidence shows that it has been violated. Neither are you responsible for the situation or state of affairs that has been shown by this prosecution and the evidence in support of it. If this man killed this woman, he created the situation. You are not responsible for it. You are simply to determine, upon your oaths, whether the circumstances are such as to require you to return a verdict of guilty as indicted; or, if not guilty as indicted, whether they require you, to return a verdict of guilty of manslaughter; or, if not guilty of either murder or manslaughter, a verdict of not guilty.

"Now, gentlemen, take this case and dispose of it, considering simply the law and the evidence you have heard, being actuated by no motives whatever, either of revenge or sympathy. Do justice between this man and the United States."

The further material facts will be found stated in the opinion of the court.

*Mr. S. D. Truitt* and *Mr. B. T. Roodhouse* for the appellant.

*Mr. Henry E. Davis,* U. S. Attorney for the District of Columbia; *Mr. D. W. Baker* and *Mr. John E. Laskey,* Assistant Attorneys, for the United States.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The indictment in this case is for murder, found under Section 5339 Revised Statutes of the United States, which provides that "every person who commits murder within any fort, arsenal, dock-yard, magazine, or in any other place, or district of country under the exclusive jurisdiction of the United States, . . . shall suffer death." This provision though found in the general revision of the statutes of the United States, and not in the revision of the statutes relating to the District of Columbia alone, is nevertheless in full force in this District. That has been decided

in several cases, and is no longer an open question. *United States* v. *Norris,* 1 Cr. C. C. 412; *United States* v. *Guiteau,* 1 Mackey, 498; *United States* v. *Barber,* 20 D. C. Rep. 79; *United States* v. *Cross,* 20 D. C. Rep. 365.

The appellant, William M. Strather, was indicted on the 31st day of December, 1897, for the crime of wilful murder, charged to have been committed in killing one Rosa Talbot, on the 15th day of October, 1897. To the indictment the accused pleaded not guilty, and he was duly tried by a jury, who rendered a verdict of guilty *as indicted* without more; whereupon he was sentenced by the court to be hung. He has appealed.

To the decision of the questions presented on this appeal, it is not necessary or material to recite the facts of the case, as set out in the bill of exceptions. The prisoner on the trial offered six prayers for specific instructions to the jury, which were refused by the court. The first four of these prayers related to questions of justification, and to provocation that would reduce the homicide to manslaughter. And the fifth prayer asked that the jury be instructed that they might qualify their verdict, under the statute, with the words "without capital punishment," "no matter what they might find the evidence to be"; and the sixth prayer asked that the jury be instructed that if they should have a reasonable doubt whether the accused struck the fatal blow in cold blood and with malice aforethought, they should not convict of murder. The court was clearly right in rejecting all of these prayers, as they were greatly calculated to mislead the jury, if they had been granted.

The subjects of all these several prayers, however, were fully covered, and clearly explained, by the judge in his very carefully prepared charge to the jury. He stated fully what would constitute murder and what manslaughter, and what would be excusable or justifiable homicide, committed in self-defense, as defined by the authorities. Indeed, all the questions raised in the defense of the accused, were fully

and clearly defined, and fairly submitted to the jury. And that the full scope and textual reading of the charge may appear, we direct that the charge *in extenso* be inserted by the Reporter in the statement of the case.

There are two principal questions presented by this appeal on the charge of the judge to the jury. First, whether the act of Congress of the 15th of January, 1897, referred to in the charge of the judge, applies to this District; and, if applicable, second, whether the construction, and the terms of the charge as to the manner and circumstances of applying the statute, as given by the judge, were correct? If, however, the statute is not applicable to this District, it is quite clear the appellant was not prejudiced, nor in any manner affected, by either the charge of the judge as to the construction of the statute, nor by the finding of the jury under the charge; as the statute simply relates to a qualification of the verdict as to the punishment, after finding the party guilty of murder.

1. In the case of *Fearson* v. *United States*, 10 App. D. C. 506, the question whether the act of Congress of January 15, 1897, applied to this District, was raised in argument, but it was not deemed necessary to decide it. It is therefore an open question whether or not the act applies to this District.

The act of January 15, 1897, provides, "That in all cases where the accused is found guilty of the crime of murder or of rape under section fifty-three hundred and thirty-nine, or fifty-three hundred and forty-five, Revised Statutes, the jury may qualify their verdict by adding thereto 'without capital punishment;' and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment at hard labor for life."

This act is amendatory of sections of the Revised Statutes therein referred in, and it manifestly was intended to have a general application and to extend to all places and districts over which Congress has general and exclusive legislative

13 App.—11

power, certainly to all places and districts to which Section 5339 of the Revised Statutes has application. It was not intended to have a less general application than the section to which it is an amendment. And, therefore, as Section 5339 of the Revised Statutes, if not by its own express terms made applicable to this District, is made applicable by a different Congressional provision, and by judicial construction ; and there can be no reason why the amendatory act of January 15, 1897, is not equally and alike applicable to this District, so far as the crime of murder is concerned. In the act of Congress of the 21st of February, 1871 (16 Stat. 419), to provide a local government for this District, by its thirty-fourth section, it was expressly declared that "the Constitution, and all the laws of the United States which are not locally inapplicable, shall have the same force and effect within the said District of Columbia as elsewhere within the United States." Rev. Stats., D. C., Sec. 93. And this provision has not been repealed by the subsequent acts of Congress substituting a different form of government for the District. *Page* v. *Burnstine,* 102 U. S. 664, 667. It is not pretended, nor is there any ground for the least pretense, that there is anything in the existing laws applicable to this District that would be in conflict with the provision of the amendatory act of January 15, 1897, as. to the crime of murder, or that would in any manner render the latter act locally inapplicable as to that crime.

We conclude, therefore, that the amendatory act of January 15, 1897, is equally applicable to this District, as and with Section 5339 of the Revised Statutes, so far as the same relates to the crime of murder.

2. Then, the next question is, whether there was error in the charge given by the court below, as to the construction, and the circumstances of the application, of the amendatory act of January 15, 1897, where the party accused has been found guilty of the crime of murder. It is contended on the part of the appellant that, by reasonable construction,

the jury should be left free to declare in their verdict "without capital punishment," no matter what the evidence might be; though it be of the most atrocious and unmitigated character; and that the court has no right to instruct the jury under what circumstances the qualified or mitigated punishment should or should not be inflicted upon the party convicted. That the matter is entirely within the discretion of the jury, without any reference whatever to the circumstances of aggravation or mitigation, as shown in the proof, whether the party found guilty of murder should suffer the penalty of death or an imprisonment for life; and that the court has no right to enlighten the jury by instruction as to the proper manner of exercising their discretion with respect to the facts of the case. The court may inform the jury what constitutes murder, and analyze the crime, and descant upon the evidence, and call the attention of the jury to all the most atrocious and malicious features of the case, but, according to the present contention, it is not allowable to the court, by way of aiding the jury in arriving at a fair and just conclusion, to suggest what punishment would be proper under all the circumstances of the case. To such a contention we can not accede.

If Congress had intended to abolish capital punishment for murder, without regard to the facts of the case, however atrocious in their nature, it would have done so without qualification. But Congress has not abolished capital punishment for murder, but has made the degree of punishment to depend upon the special circumstances of each case as they may be found by the jury. In many of the States, as we know, if not in a majority of them, it has long since been deemed fproper and just to divide the common law crime of murder into first and second degrees, and to prescribe the punishment accordingly. This is done because it is common experience that the general common law crime of murder often includes different degrees of atrociousness, such as to make it just to discriminate as to the degrees

of punishment to be inflicted upon conviction, though the crime may be embraced under the general denomination of murder. In such cases the trial juries are required to find in their verdict the degree of murder of which the party is guilty, and the court imposes the punishment prescribed by law. The legislation of many of the States upon this subject is referred to in the opinion of the Supreme Court of the United States in the case of *Davis* v. *Utah Territory*, 151 U. S. 262, 267, 268-9. But Congress, instead of dividing the crime of murder into two degrees and designating what should constitute murder in the first degree and what murder in the second degree, have done substantially something of the same nature in a different way. Under the general charge of murder, the jury are allowed to find their verdict with reference to the facts of the case, and to either find the party guilty as charged simply, which requires punishment by death, or to find him guilty "without capital punishment," which requires imprisonment for life. This finding, however, should be made with reference to the facts of the case; as it is manifest that it was never intended that a party shown to have committed the crime under the most revolting and atrocious circumstances should receive the qualified or mitigated punishment, and a party under much less revolting and atrocious circumstances should or might receive punishment by death, according to the temper and notions of different juries trying the parties. Such a principle applied in the administration of justice would at once destroy that which is the most essential element of all law, and that is its certainty as applied to all parties alike, and not allowed in its application to be dependent upon the mere arbitrary whims or discretion of juries, without reference to the facts attending the commission of the crime. It is a settled principle in the administration of the criminal law in the courts of the United States, that the judge charges the jury upon the whole case, both as to the law and the facts, but leaving the jury entirely free to find the facts according to

the exercise of their own untrammelled judgment. The
judge may arrange and comment upon the evidence of the
case, as a means of aiding the jury in reaching a just con-
clusion, but the jury must be made to understand that it is
their exclusive province to determine what facts are estab-
lished by the proof. But in regard to the law in criminal
cases, it is the duty of the jury to receive it from the court,
and to apply it as given by the court, subject, however, to
the condition that by a general verdict a jury of necessity
determines both law and fact as compounded in the issue
submitted to them in the particular case. *Sparf and Hansen*
v. *United States*, 156 U. S. 51. And where a statute is in-
volved and its construction becomes necessary for the guid-
ance of the jury, that is matter of law, and, of course, is for
the court. In construing a statute it is not only the letter,
but the spirit, the reason and legislative intent, that must
be regarded, and that, in all cases, presents a question for
the court. And in the statute under consideration, there is
nothing to indicate an intention on the part of Congress to
divest the court of its legitimate function, in cases where
the provision of the statute is applicable.

In no case has the question of the right of the court to
instruct the jury upon the entire law of the case been more
firmly met, and the principle more clearly and concisely
stated, than by Mr. Justice Story in the case of *United States*
v. *Battiste*, 2 Sum. 240, 243, 244. That was a trial for a
capital crime under the act of May 15, 1820, Ch. 113, to
suppress the slave trade; and it appears that counsel had
insisted that the jury were the judges of the law, as well as
of the facts. But the learned justice, in his charge to the
jury, said: "But I deny, that, in any case, civil or criminal,
they (the jury) have the moral right to decide the law ac-
cording to their own notions or pleasure. On the contrary,
I hold it the most sacred constitutional right of every party
accused of a crime, that the jury should respond as to the facts,
and the court as to the law. It is the duty of the court to

instruct the jury as to the law; and it is the duty of the jury to follow the law, as it is laid down by the court. This is the right of every citizen; and it is his only protection. If the jury were at liberty to settle the law for themselves, the effect would be, not only that the law itself would be most uncertain, from the different views, which different juries might take of it; but in case of error, there would be no remedy or redress by the injured party; for the court would not have any right to review the law as it had been settled by the jury. Indeed, it would be almost impracticable to ascertain what the law, as settled by the jury, actually was. On the contrary, if the court should err in laying down the law to the jury, there is an adequate remedy for the injured party, by a motion for a new trial, or a writ of error, as the nature of the jurisdiction of the particular court may require. Every person accused as a criminal has a right to be tried according to the law of the land—the fixed law of the land—and not by the law as a jury may understand it, or choose, from wantonness, or ignorance, or accidental mistake, to interpret it."

The same question was most exhaustively considered by the late Mr. Justice Curtis, in the case of the *United States* v. *Morris*, 1 Curtis, 23, 52–58. In that case it was contended that the jury in all criminal cases in the courts of the United States were the rightful judges of the existence, construction, and effect of every law that was material in a criminal case. But, in response to that contention, Mr. Justice Curtis, among other things, said:

"It was evidently the intention of the Constitution that all persons engaged in making, expounding, and executing the laws, not only under the authority of the United States but of the several States, should be bound by oath or affirmation to support the Constitution of the United States. But no such oath or affirmation is required of jurors, to whom it is alleged the Constitution confides the power of expounding that instrument; and not only construing, but holding

invalid any law which may come in question on a criminal trial.   .   .   .   In my opinion, it is the duty of the court to decide every question of law which arises in a criminal trial; if the question touches any matter affecting the course of the trial, such as the competency of a witness, the admissibility of evidence, and the like, the jury receive no direction concerning it; it affects the materials out of which they are to form their verdict, but they have no more concern with it than they would have had if the question had arisen in some other trial.   If the question of law enters into the issue, and forms part of it, the jury are to be told what the law is, and they are bound to consider that they are told truly; that law they apply to the facts, as they find them, and thus, passing both on the law and the facts, they, from both, frame their general verdict of guilty or not guilty. Such is my view of the respective duties of the different parts of this tribunal in the trial of criminal cases, and I have not found a single decision of any court in England, prior to the formation of the Constitution, which conflicts with it.

These decisions of the two distinguished jurists, who were at the time justices of the Supreme Court of the United States, but then presiding in the Circuit Court, have been fully approved and adopted by a majority of the Supreme Court, in *Sparf & Hansen* v. *United States, supra,* where the whole subject has been most elaborately and ably considered in opinions of both the majority and minority of the learned justices sitting in that case.

In the present case, the justice at the trial below fully charged the jury both as to the law and as to his view of the facts; but leaving the facts entirely to the jury.   And with respect to the amendatory act of January 15, 1897, the judge was explicit in charging the jury, that if they concluded that the accused was guilty of murder, it was their right, under, the act of Congress, to add to their verdict "without capital punishment."   He further said: " I

have no doubt that this act of Congress was intended to
serve some useful purpose. The penalty for murder has not
been disturbed by this act of Congress; that is fixed by law;
and the jury can neither make nor unmake it. Doubtless
the intention of the legislature was this: That in a case in
which the jury reached the conclusion that the party on trial
is guilty of murder, and circumstances are shown by the
evidence that are of a palliating nature, they may give the
accused the benefit of those palliating circumstances, and
say in their verdict, 'without capital punishment.' If, how-
ever, the jury believe that there are no palliating circum-
stances, it is their duty not to add anything to their verdict,
but to the penalty as it stands." And the judge further
added: "But the object of this penalty is to protect society;
and the jury should not interfere with it under any circum-
stances, unless the circumstances are such as to satisfy the
jury that this qualification provided by the statute should
be added to their verdict."

This, we think, was clearly right. If it was not the in-
tention of Congress to abolish capital punishment, but to
leave the matter of degree of guilt to the finding of the jury,
that must, in the nature of things, depend upon the facts of
the case. We think the judge below was strictly right in
the interpretation of the act of the 15th of January, 1897,
and that there was no error in the terms of the charge to
the jury. The jury were left entirely free, under the in-
struction of the court, to determine the question whether
the circumstances of the crime charged were of a character
to justify them in returning a verdict for the mitigated
punishment, or such as was returned by them.

In several of the States of the Union statutes substantially
similar to that of the act of Congress of January 15, 1897,
exist, and in many of such States those statutes have been
construed by the courts and given practical application;
and, with but one or two exceptions, brought to our atten-
tion, those statutes have been construed and applied, under

the direction of the courts, in the same manner that the act here in question has been construed and applied by the court below, in the charge given the jury. *The People* v. *Welch,* 49 Cal. 179; *People* v. *Brick,* 68 Cal. 190; *People* v. *Bawden,* 90 Cal. 195; *Brown* v. *State,* 109 Ala. 70; *Inman* v. *The State,* 72 Ga. 269; *Valentine* v. *The State,* 77 Ga. 483; *Nowacryk* v. *State,* 139 Ill. 336. In all these cases, upon statutes substantially similar to the act of Congress here involved, the courts have held that the degree of punishment should be determined with reference to the special facts and circumstances of the case.

Finding no error, the judgment appealed from must be affirmed; and it is so ordered.

*Judgment affirmed.*


Mr. Justice SHEPARD, dissenting: *

I am unable to concur with my brothers in their construction of the act of Congress which provides that when an accused person shall be found guilty of murder, the jury may qualify their verdict by adding, "without capital punishment."

In my opinion, the language of the act is plain and affords no room for construction—for appeal from its letter to its spirit.

Public policy in respect of the punishment of offenses is a matter within the exclusive control of Congress, and departures therein, whether to be regarded as wise or unwise, must be given effect to as declared.

To my mind, it appears plain, that whilst Congress did not abolish capital punishment for the crime of murder, it nevertheless committed the matter of its infliction to the uncontrolled discretion of the jury in each case.

If it had been intended that the exercise of this power of

---

* This dissenting opinion applies as well to the cases of Smith *v.* United States, *post,* p. 155, and Winston *v.* United States, *post,* p. 157.

commutation of the death penalty should depend upon the court, or upon the jury, subject to the advice and admonition of the court, I think it would have been expressly so declared.

Whether, in the exercise of an unlimited discretion, juries may or may not make distinctions between criminals, not justified by the conditions of their respective cases, or, in practice, virtually abolish the death penalty, is wholly beside the question. In the exercise of its own undoubted discretion in the premises, Congress has seen proper to commit the power to the jury, and to the jury alone.

In construing the statute to mean that the court may, without error, admonish the jury in respect of the grounds upon which they may commute the death penalty by the addition to their verdict, it is not denied that he is compelled also to instruct them that it is their privilege to exercise the power notwithstanding.

With such instructions as were given in this case, no jury, composed of good citizens, accustomed, as it is their duty, to accept and apply the law as given them in charge by the court, could have extended clemency to any one of these appellants.

After such an admonition, to such a jury, the further information that they might, nevertheless, commute the punishment was but a meaningless formality. It did not give the accused the benefit of the statute.

I can not accept as sound the argument that the purpose of Congress in this enactment was substantially the same as shown in the legislation of the States, whereby the offense of murder has been divided into two degrees—murder of the first and murder of the second degree.

On the contrary, it seems to me that there is a substantial difference of purpose. Under the State statutes referred to, murder of the first degree consists of homicide committed in the perpetration of offenses like rape, robbery, arson and burglary, or by poison, starvation, torture, and so

forth, showing express malice. All murder not included in the definition of the first is murder of the second degree.

In the enforcement of those statutes the courts are required to declare the law to the jury in application to the facts. Where the evidence shows plainly that the accused, if guilty at all, is guilty of murder of the first degree and nothing less, it is the duty of the court to withhold from the jury the privilege of returning a verdict of guilty of murder of the second degree. The court is not required to submit the question of the degree of guilt to the jury, regardless of the evidence, as under the act of Congress it is compelled to extend to them the privilege of commuting the death penalty.

If the purposes of the two sets of statutes are the same, it would be more reasonable to hold that, under the act of Congress, the right to commute the death penalty should not be accorded to the jury at all, unless the evidence should discover something tending to warrant the exercise of clemency.

For the reasons given, I am of the opinion that the judgment in each case should be reversed.

The judgment in this case was reversed by the Supreme Court of the United States, to which court the case was taken on writ of error, January 3, 1899.